## S09A0532. BUTLER v. THE STATE.
(678 SE2d 92)

SEARS, Chief Justice.

In 2008, a Chatham County jury convicted Anthony Butler of felony murder and other crimes in connection with the stabbing death of Reader Mae Stewart.[1] Butler contends the evidence was legally insufficient to support his convictions. In addition, he argues the trial court erred in granting the State's motion in limine barring the defense from mentioning the first offender status of a State witness, sustaining an objection to defense counsel's questioning of the same witness, and denying the defendant's motion to sequester the lead detective. For the reasons that follow, we affirm.

1. Butler and Stewart had been lovers for four years and had lived together in Stewart's house for two years. Stewart's grown son, Willie Lavant, had recently moved in with them, and Stewart's granddaughter, ten-year-old Malaysha Hall, was a frequent guest.

On August 21, 2004, Stewart and Hall were watching television in the basement, which had both a den and kitchen. Butler joined them, and Butler and Stewart began to argue. They eventually moved the argument from the den to the kitchen, but Hall could still see them through glass panes in the kitchen door. Hall heard Stewart scream and saw Butler either stabbing or hitting Stewart. Stewart, who was bleeding, ran out of the kitchen and up the stairs to the house's main floor. Hall followed, and Butler chased after them. Stewart escaped through the front door, but Butler prevented Hall from exiting.

Trapped in the house with Butler, Hall went to her uncle Lavant's room, which was on the main floor. She woke him and told him what had happened. When Lavant emerged from the bedroom, he found Butler in the hallway and asked him what was going on. Butler replied, "You want a piece of me, too?" and then proceeded to attack Lavant, striking him several times and lacerating his head and neck. Lavant eventually fought Butler off, and Butler fled out the front door. Butler threw the bloody knife he used to stab Stewart in the bushes and began walking down the street toward a friend's house.

---

[1] Butler committed his crimes on August 21, 2004. The Chatham County grand jury indicted him on November 3, 2004. Butler was tried and convicted of malice murder and other crimes, but on January 3, 2007, the trial court granted his motion for new trial. Butler was retried January 30 to February 1, 2008. The jury acquitted Butler of malice murder but convicted him of felony murder, the underlying felony of aggravated assault, and possession of a knife during the commission of a felony. The trial court sentenced Butler to life in prison plus five years consecutive. Butler filed a timely motion for new trial on February 4, 2008, which was amended on July 2, 2008. The trial court denied the motion on October 23, 2008, and Butler filed a timely notice of appeal. The case was docketed on December 18, 2008, and submitted for decision on the briefs.

The police located Butler shortly thereafter. Asked what happened, Butler replied that his girlfriend hit him, and he stabbed her. Butler was taken to the hospital for treatment, advised of his *Miranda* rights, and questioned, and he admitted he might have cut Stewart.[2] Butler was interviewed again at the police station after being advised of his *Miranda* rights a second time. Butler again admitting stabbing Stewart.

Stewart died at the hospital. The medical examiner opined that the cause of death was homicide from multiple sharp force injuries. The medical examiner testified at Butler's trial that the knife found in the bushes was the type of instrument that inflicted Stewart's injuries, the bulk of the stabs came from behind, and the cut on Butler's hand was an offensive wound likely sustained when his hand slid down the knife blade as he was stabbing Stewart with enough force to break one of her ribs.

Viewed in the light most favorable to the verdict, we have no difficulty concluding that the evidence presented at trial was sufficient to authorize a rational trier of fact to find Butler guilty beyond a reasonable doubt of the crimes for which he was convicted.[3]

2. The trial court granted the State's motion in limine to prohibit the defendant from impeaching Lavant's testimony with his probation for a forgery offense discharged under the First Offender Act.[4] Butler acknowledges this Court's holding in *Matthews v. State* that under the plain language of the Act, a witness's first offender record cannot be used to impeach his or her testimony by showing commission of a crime of moral turpitude, and he does not ask us to overrule *Matthews*.[5] Instead, he argues: (1) *Matthews* is inapplicable because the State introduced no evidence showing that Lavant successfully completed his first offender probation; and (2) even if he did, prohibiting the defense from informing the jury that Lavant pled guilty to a crime of moral turpitude violated Butler's Sixth Amendment right "to be confronted with the witnesses against him."[6]

Butler's first argument has been waived. In the trial court,

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

[3] *Jackson v. Virginia*, 443 U. S. 307, 309 (99 SC 2781, 61 LE2d 560) (1979); *In re Winship*, 397 U. S. 358, 361-364 (90 SC 1068, 25 LE2d 368) (1970).

[4] OCGA §§ 42-8-60 to 42-8-66.

[5] *Matthews v. State*, 268 Ga. 798, 801-803 (493 SE2d 136) (1997). Accord *Marks v. State*, 280 Ga. 70, 74 (623 SE2d 504) (2005). See OCGA § 42-8-62 (a) ("Upon fulfillment of the terms of probation, upon release by the court prior to the termination of the period thereof, or upon release from confinement, the defendant shall be discharged without court adjudication of guilt. Except for the registration requirements under the state sexual offender registry and except as otherwise provided in Code Section 42-8-63.1, the discharge shall completely exonerate the defendant of any criminal purpose and shall not affect any of his or her civil rights or liberties; and the defendant shall not be considered to have a criminal conviction.").

[6] U. S. Const. Amend. VI.

Butler never questioned the prosecutor's representation that Lavant successfully completed the first offender program and that the forgery offense had been discharged. Errors not raised in the trial court will not be heard on appeal.[7]

Butler's second argument fares no better. Butler cites no authority aside from *Davis v. Alaska* in support of his bald assertion that barring Butler from impeaching Lavant with his discharged forgery record violated Butler's rights under the Confrontation Clause.[8] In *Matthews*, we held that "impeachment . . . to show a general lack of trustworthiness based on a prior criminal conviction" is "not guaranteed by the confrontation clause," and that "unless there is an adjudication of guilt, a witness may not be impeached on general credibility grounds by evidence of a first offender record."[9] In the course of the discussion, we expressly considered the Supreme Court's opinion in *Davis* but concluded it did not mandate a different result.[10]

3. Butler contends the trial court erred in prohibiting him from questioning Lavant about his character on cross-examination. This claim refers to the portion of Lavant's cross-examination in which defense counsel asked Lavant four times whether he would tell a lie. The first three times, Lavant answered with some variant of the word "no." The fourth time defense counsel asked the question, the State objected on the ground that it had been asked and answered, and the trial court sustained the objection.

"The law has regard to the rights of witnesses as well as those of the parties litigant."[11] Witnesses have a right "to be examined only as to relevant matter and to be protected from improper questions and from harsh or insulting demeanor" by counsel.[12] The trial court acted well within its discretion in shutting down defense counsel's abusive questioning.

4. The trial court did not abuse its discretion in denying Butler's motion to sequester the lead detective on the case during the testimony of other witnesses. The prosecutor explained that the lead detective's presence throughout the trial was necessary for the orderly presentation of the evidence because: (1) the case was old, in part because Butler had already been convicted once but was granted a new trial; (2) this was the prosecutor's first murder trial; and (3)

---

[7] *Smith v. State*, 284 Ga. 304, 307, 309 (667 SE2d 65) (2008); *Earnest v. State*, 262 Ga. 494, 494 (422 SE2d 188) (1992).

[8] *Davis v. Alaska*, 415 U. S. 308 (94 SC 1105, 39 LE2d 347) (1974).

[9] *Matthews*, 268 Ga. at 802.

[10] Id.

[11] *Smith v. State*, 235 Ga. 327, 328 (219 SE2d 440) (1975).

[12] OCGA § 24-9-62.

the lead detective played a prominent role in assembling the case against Butler and was therefore invaluable as a resource for the prosecutor as the trial progressed. These grounds, which find support in the record, were sufficient reason for the trial court to exempt the lead detective from the rule of sequestration at Butler's trial.[13]

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 8, 2009.

*Emory B. Bazemore*, for appellant.

*Larry Chisolm, District Attorney, Frank M. Pennington II, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jason C. Fisher, Assistant Attorney General*, for appellee.

---

[13] *Warner v. State*, 281 Ga. 763, 765 (642 SE2d 821) (2007); *Bryant v. State*, 274 Ga. 798, 801 (560 SE2d 23) (2002).