## A11A1269. DAVIS v. THE STATE.
### (718 SE2d 559)

SMITH, Presiding Judge.

Justin Davis, a/k/a Shaun Neverson, appeals from his convictions of burglary, aggravated assault, attempt to commit armed robbery, and possession of a firearm during the commission of a felony.[1] Davis contends (1) that the trial court erred by failing to merge his aggravated assault conviction into the attempted armed robbery conviction; (2) that the trial court erred by limiting defense counsel's cross-examination of a State's witness; and (3) that he received ineffective assistance of counsel. For the reasons set forth below, we affirm in part, vacate in part, and remand for resentencing.

Viewed in the light most favorable to the verdict, the record shows that the victim was at home in his apartment with his two teenage daughters when he "heard somebody try [his] doorknob" around 11:00 p.m. When he looked out the window, he saw "two guys coming out the front of the apartment building running around towards the back, so [he] went and checked the back door to make sure that was locked." He retrieved his gun and went back to the front of his apartment where he saw someone try the door again.

---

[1] The trial court sentenced Davis to ten years in prison for burglary, aggravated assault, and criminal attempt to commit armed robbery, with the sentences to run concurrently. The trial court sentenced Davis to five years probation on the firearm charge, running consecutive to the sentences on the other three convictions.

When he went and checked the front door, it was unlocked, and the door came open. He saw three men wearing bandanas and hoodies and then a fourth man wearing a ski mask who "came from the blind side" of the doorway with a raised gun. The victim testified that when he saw the gun, he pulled his own gun and shot the man holding the gun in the leg. After the gunman was shot, his three companions fled.

The victim testified that the gunman was inside his apartment when he shot him. The two men then struggled with one another for both weapons, and the gunman's ski mask fell off. During the struggle, one daughter used a bat to hit the gunman on his injured leg, while the other daughter called the police. After a few minutes of struggle, the man "gave the weapon up" and told the victim "it's the wrong apartment, it was a mistake."

After securing both weapons, the victim decided to take the gunman to the hospital because the police had not yet arrived and the gunman kept saying he needed to go to the hospital. The victim drove him to the hospital and returned home after leaving him at the emergency room. The victim admitted that when he returned home he initially lied to the police, claiming that both guns belonged to the men outside his door. When a detective arrived, he told the truth: that the gun with the removed serial number belonged to him.

A detective interviewed Davis in the hospital emergency room. Davis told the detective that he was shot after getting into an altercation with an unknown man while he was walking to a liquor store. He claimed that the man shot him and left and that a woman he also did not know stopped and drove him to the hospital.

During the trial, the victim identified Davis as the gunman, and both of his daughters identified Davis as the man they saw "tussling" with their father. DNA taken from the ski mask that fell off during the struggle matched a known sample from Davis. Davis's cellmate in the county jail testified that Davis told him he was shot while trying "to rob a guy that had a bunch of money and drugs."

1. Davis asserts that the trial court erred by refusing to merge his aggravated assault conviction with his attempted armed robbery conviction because "there was never a break in the action to end one offense and begin another." The State asserts that the offenses did not merge because the aggravated assault was complete when Davis pointed the handgun at the victim, and that the armed robbery was complete when Davis entered the victim's apartment as alleged in the indictment.[2]

---

[2] Count 2 of the indictment charged Davis with committing aggravated assault "upon the person of [the victim], with a handgun, a deadly weapon, by pointing the handgun at him,

> Aggravated assault is not a lesser included offense of armed robbery as a matter of law, and the two offenses rarely merge as a matter of fact. We determine whether one crime is included in another as a matter of fact by applying the "required evidence" test adopted recently by our Supreme Court. The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. The important question is not the number of acts involved, or whether the crimes have overlapping elements, but whether, looking at the evidence required to prove each crime, one of the crimes was established by proof of the same or less than all the facts required to establish the commission of the other crime charged.

(Citations, punctuation and footnotes omitted.) *Reed v. State*, 293 Ga. App. 479, 481-482 (2) (668 SE2d 1) (2008).

We are not persuaded by the State's argument that the aggravated assault was completed before the attempted armed robbery. The victim testified repeatedly that Davis was in his apartment when he shot him and that he fired his gun as soon as he saw Davis point a gun at him while forcing his way in. Both crimes were complete when Davis pointed the gun at the victim while simultaneously entering the apartment, and there was no separate aggravated assault before the attempted armed robbery began. The trial court therefore erred by failing to merge the aggravated assault charge into the attempted armed robbery charge. *Reed*, supra, 293 Ga. App. at 482 (2); *Young v. State*, 272 Ga. App. 304, 307-308 (2) (612 SE2d 118) (2005).

2. Davis argues the trial court erred by prohibiting defense counsel from cross-examining Davis's cellmate about the charge for which he had been jailed. The record shows that before the cellmate testified, counsel for both parties and the trial judge discussed at length the scope of allowable impeachment of this witness. The record shows that the witness was in jail for violating the terms of his probation for a first offender sentence on an aggravated assault charge. At the time the witness approached the police, his probation

---

thereby placing said person in reasonable apprehension of immediately receiving a violent injury." Count 3 of the indictment charged Davis with attempt to commit armed robbery "in that the accused did knowingly and intentionally perform an act, to wit: entering the victim's apartment with a handgun, said act constituting a substantial step toward the commission of said crime, by attempting to take the property of [the victim], from the immediate presence of [the victim], by use of an offensive weapon, to wit: a handgun, with the intent to commit a theft. . . ."

revocation was pending, but it had been resolved by the time he testified at trial. Defense counsel asserted that he was entitled to question the witness

> about the reason he is in jail, because the jury should know that he pled guilty. Although that guilty plea has not been entered on the record, he admitted in open court under oath that he assaulted a police officer in an aggravated manner, obstructed a law enforcement officer, and he admitted the probation revocation charges . . . of testing positive for methamphetamine.

The trial court ruled that the jury could learn that the witness was "in jail" and nothing further.

Davis asserts that the trial court should have allowed the evidence of the pending probation revocation to demonstrate bias and a motive for the witness to curry favor with the State by manufacturing evidence against him. We cannot consider this claim, however, because Davis failed to raise this ground in the trial court. *Haynes v. State*, 199 Ga. App. 288, 290-291 (3) (404 SE2d 585) (1991). "Errors not raised in the trial court will not be heard on appeal." *Butler v. State*, 285 Ga. 518, 519 (2) (678 SE2d 92) (2009).

Defense counsel sought to admit evidence of the witness's first offender guilty plea and his first offender probation revocation for general impeachment purposes only. But it is well settled that

> the first offender record of one who is currently serving a first offender sentence or of one who has successfully completed the first offender sentence may not be used to impeach the first offender on general credibility grounds (i.e., by establishing that the first offender has been convicted of a felony or crime of moral turpitude) because no adjudication of guilt has been entered.

(Citations and punctuation omitted.) *Davis v. State*, 269 Ga. 276, 277 (2) (496 SE2d 699) (1998). See also *Butler*, supra, 285 Ga. at 518-520 (2).

3. Davis contends that he received ineffective assistance of counsel because his attorney failed to assert that the pending probation revocation was admissible to show the cellmate's bias. To succeed on an ineffective assistance claim, a criminal defendant must demonstrate both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Miller v. State*, 285 Ga. 285, 285-287 (676 SE2d 173) (2009). "A trial court's

finding that a defendant has not been denied effective assistance of trial counsel will be affirmed unless clearly erroneous." (Citations and punctuation omitted.) *Scapin v. State*, 204 Ga. App. 725 (420 SE2d 385) (1992).

Davis correctly asserts that his trial counsel's performance was defective for failing to urge that he was entitled to cross-examine the cellmate about the probation revocation charges that were pending at the time he went to the police with Davis's jailhouse confession.

> While it is true that a first offender sentence cannot be used to impeach the first offender on general credibility grounds because no adjudication of guilt has been entered, the defendant is entitled to attack the credibility of the witness by showing that the pending charges reveal a possible bias, prejudice, or ulterior motive on the part of the witness to give untruthful or shaded testimony in an effort to please the State.

(Citations and punctuation omitted.) *Melson v. State*, 263 Ga. App. 647, 648 (2) (588 SE2d 822) (2003).

Our inquiry does not end here, however, because Davis must also demonstrate that there is a reasonable probability that the trial result would have been different if not for his counsel's deficient performance. Based upon the overwhelming evidence against Davis, we conclude that he cannot meet this burden. *Melson*, supra, 263 Ga. App. at 648 (2). The record shows that the victim, as well as his two daughters, testified about the victim's struggle with Davis in the apartment. DNA evidence placed Davis in the apartment, and he was hospitalized for a gunshot wound consistent with the victim's testimony. Davis has therefore failed to show that there is a reasonable probability that the outcome of his trial would have been different if his counsel's performance had not been deficient.

*Judgment affirmed in part and vacated in part, and case remanded for resentencing. Mikell and Dillard, JJ., concur.*

DECIDED NOVEMBER 1, 2011.

*Sharon L. Hopkins*, for appellant.

*Daniel J. Porter, District Attorney, Alston C. McNairy, William C. Akins, Assistant District Attorneys*, for appellee.