**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 8, 2012**

# In the Court of Appeals of Georgia

A12A1647. REED v. THE STATE.

BARNES, Presiding Judge.

An eleven-person jury found Percy Joseph Reed guilty of aggravated assault, aggravated assault with intent to rob, and attempted armed robbery. After finding that the three counts merged as a matter of fact, the trial court merged the other two counts into the count for aggravated assault with intent to rob and sentenced him to twenty years imprisonment. Reed moved for a new trial, and the trial court denied the motion. On appeal, Read contends that the trial court erred in allowing the case to proceed with only eleven jurors and in sentencing him for aggravated assault with intent to rob rather than for attempted armed robbery. For the reasons discussed below, we conclude that, while the trial court did not err in allowing the case to proceed with eleven jurors, the court misapplied merger principles and erred in

sentencing Reed for aggravated assault with intent to rob. Accordingly, Reed's conviction for aggravated assault with intent to rob must be set aside and the case remanded for resentencing on his conviction for attempted armed robbery.

Following a criminal conviction, we view the evidence in the light most favorable to the jury's verdict. See *Vadde v. State*, 296 Ga. App. 405 (674 SE2d 323) (2009). So viewed, the evidence showed that on July 2, 2004, Reed entered a feed-and-seed store in Tifton, Georgia where he routinely purchased horse feed and supplies. Reed had been a customer at the store for approximately one year and had previously been sold goods there on account.

No one was in the store when Reed entered, except for one employee. Reed spoke with the employee about how much he owed on his account, which was overdue, and he told the employee that he wished to purchase two bags of oats. The employee went to the back of the store and retrieved the two bags.

After the employee returned to the front of the store with the two bags of oats, Reed spoke with him for a few more minutes and then said that he wished to purchase another bag of feed. The employee went to the back of the store and retrieved another bag. As the employee was on his way back to the front counter with the bag of feed, Reed suddenly struck him on the back of his head with a board from the store,

causing him to briefly lose consciousness and fall to the floor. When the employee regained consciousness and attempted to get back up, Reed struck him two or three more times. The employee "decided to play dead," and Reed stopped striking him. Reed then dragged the employee by his feet to the back of the store.

Reed left the employee at the back of the store and ran back to the front counter. As the employee attempted to get up from the floor, he heard the buzzer go off on the front cash register. According to the employee, the buzzer would go off when someone attempted to open the cash register using the wrong button. The employee also heard the front door bell ring and saw that another customer had entered the store.

Bleeding from the head, the employee began crawling towards the front of the store, and he saw Reed standing behind the counter where the cash register was located. The employee yelled out to the other customer that Reed was trying to rob him, and Reed ran from the store. The other customer dialed 911, and an ambulance and sheriff's deputies arrived on the scene shortly thereafter. The employee was transported to the hospital, where he received stitches and staples in the back of his head and was treated for a concussion. Later that day, a law enforcement officer discovered Reed a short distance from the store and apprehended him.

Reed was indicted and tried before a jury on two counts of aggravated assault and one count of attempted armed robbery.[1] In the first aggravated assault count, the indictment averred that Reed "did unlawfully make an assault upon the person of [the employee] with an object, namely, a wooden board, which when used offensively against another person is likely to result in serious bodily injury by hitting him with said board." In the second aggravated assault count, the indictment averred that Reed "did unlawfully make an assault upon the person of [the employee] with the intent to rob by hitting him with a wooden board." In the count for attempted armed robbery, the indictment averred that Reed "did unlawfully attempt to commit the crime of armed robbery in violation of OCGA 16-4-1 and that [he] did knowingly and intentionally perform acts constituting a substantial step toward the commission of the crime by hitting [the employee] with a wooden board and attempting to open a cash register containing U.S. currency."

At trial, the store employee testified to the events as set out above. The customer who entered the store during the robbery also testified to what he had witnessed. In addition, the jury heard from several sheriff's deputies involved in the

---

[1] Reed also was indicted and tried on one count of kidnapping, but he was acquitted on that count.

4

investigation and in Reed's apprehension. After the State rested, Reed chose to testify in his own defense. Reed denied trying to rob the feed-and-seed store, and he claimed that the employee had first attacked him with the board because he was angry with Reed for having not paid his overdue account. According to Reed, he struck the employee in self-defense.

After the evidence had closed and the jury had begun its deliberations, the trial court learned that one of the jurors had read a newspaper article about the case in violation of the court's previous instructions. During questioning, the juror testified that she had "glanced" at the article but did not discuss it with the other jurors. Defense counsel asked that the juror be removed from the panel and the case be allowed to proceed with eleven jurors,[2] noting that he had "talked to [Reed] just now and he agrees that's the way to go." The trial court asked, "Is that right, Mr. Reed?" Reed responded, "Yes, sir," and the trial court excused the juror. The jury then continued its deliberations with only eleven jurors.

The eleven remaining jurors found Reed guilty of the two counts of aggravated assault and the one count of attempted armed robbery. The trial court found that the

---

[2] Earlier in the case, one of the jurors had a death in the family and was replaced with the sole alternate.

three counts merged as a matter of fact. In this respect, the trial court found that the first count of aggravated assault and the count for attempted armed robbery merged into the count for aggravated assault with intent to rob. Based upon its merger analysis, the trial court sentenced Reed to twenty years imprisonment for committing aggravated assault with intent to rob. Reed filed a motion for new trial, which the trial court denied, and this appeal followed.

1. Reed contends that the trial court erred in allowing the case to proceed with only eleven jurors. We disagree because Reed, through his trial counsel, waived his right to a twelve-person jury.

Counsel for an accused can validly waive the accused's right to a jury of twelve "if (1) the waiver is made, without objection, in the accused's presence or (2) the accused otherwise acquiesces in the waiver." (Citation and punctuation omitted.) *Davis v. State*, 192 Ga. App. 47, 48 (3) (383 SE2d 615) (1989). See *Hudson v. State*, 250 Ga. 479, 483-484 (3) (a) (299 SE2d 531) (1983); *Weeks v. State*, 187 Ga. App. 307, 310 (2) (370 SE2d 344) (1988). The record reflects that Reed was present when his trial counsel requested that the case be allowed to proceed with only eleven jurors, did not object to his counsel's request, and, in fact, expressly consented to the request

when questioned about the issue by the trial court.[3] Accordingly, the trial court committed no error in concluding that Reed had waived his right to a jury of twelve and in allowing the case to proceed with eleven jurors. See id.

2. Reed also argues that the trial court erred in merging the first count of aggravated assault and the count for attempted armed robbery into the count for aggravated assault with intent to rob. According to Reed, the aggravated assault counts were lesser offenses included in the attempted armed robbery count as a matter of fact. Consequently, he contends that the trial court should have merged the aggravated assault counts into the count for attempted armed robbery, and, therefore, should have sentenced him only on the latter count, which carried a maximum sentence of 10 years when the attempted armed robbery was committed in July 2004. See OCGA §§ 16-4-6 (a) (2004); 16-8-41 (b) (2004). See generally *Rosser v. State*, 312 Ga. App. 240, 240-241 (1) (718 SE2d 310) (2011) (criminal offense is to be

---

[3] Reed suggests that our existing precedent on the waiver issue should be overturned and replaced with a rule requiring the trial court to have a more thorough colloquy with a criminal defendant before allowing the waiver of his right to a twelve-person jury. We decline to overturn our own precedent on this issue. Furthermore, we of course are bound by and cannot overturn our Supreme Court's decision in *Hudson*, 250 Ga. at 484 (3) (a). See *State v. Brown*, 315 Ga. App. 282, 284 (726 SE2d 764) (2012) (reiterating that this Court is "bound to follow the decisions of our Supreme Court").

7

punished according to sentencing range in effect at time of commission of the offense). We agree with Reed.

> When the same conduct establishes the commission of more than one crime, a defendant may be prosecuted and found guilty of each crime but may not be sentenced for both. When the jury finds the defendant guilty of both crimes, the lesser offense merges into the greater offense and the court sentences on the greater offense only.

(Citations omitted.) *Ellison v. State*, 265 Ga. App. 446, 449 (3) (594 SE2d 675) (2004).

Here, the State does not dispute that the two counts of aggravated assault and the one count for attempted armed robbery merged as a matter of fact. And our Supreme Court and this Court have consistently held that when convictions for aggravated assault and attempted armed robbery merge as a matter of fact, the aggravated assault conviction is the lesser offense and should be merged into the attempted armed robbery conviction. See *Hambrick v. State*, 256 Ga. 148, 150-151 (4) (344 SE2d 639) (1986); *Davis v. State*, 312 Ga. App. 328, 330 (1) (718 SE2d 559) (2011); *Garland v. State*, 311 Ga. App. 7, 13 (3) (714 SE2d 707) (2011); *Herndon v. State*, 229 Ga. App. 457, 461 (11) (494 SE2d 262) (1997), overruled on other grounds, *Felix v. State*, 271 Ga. 534, 540 (523 SE2d 1) (1999); *Redding v. State*, 196

8

Ga. App. 751, 751-752 (397 SE2d 34) (1990). Consequently, the trial court erred in failing to merge the aggravated assault counts into the armed robbery count for purposes of sentencing. We therefore vacate Reed's judgment of conviction and sentence for aggravated assault with intent to rob, and we remand the case to the trial court for resentencing on his conviction for attempted armed robbery. See id.

*Judgment vacated and case remanded with direction. Adams and McFadden, JJ., concur.*