## A06A1929. BOONE v. THE STATE.
(637 SE2d 795)

BLACKBURN, Presiding Judge.

Following a jury trial, Rebecca Boone appeals her conviction of armed robbery of a restaurant, contending: (1) that the evidence was insufficient to support the verdict; and (2) that the trial court erred in denying her motion to suppress evidence seized during a traffic stop and subsequent inventory search of a vehicle. We disagree and affirm.

"On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and [Boone] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility." *Eady v. State*.[1]

So viewed, the evidence shows that the robbery at issue here was the second in a string of three related robberies occurring on January 3, 2003. On that day, Rebecca Boone, Amanda Boone (Rebecca's cousin), and Jamie Peterson rode together in Rebecca's old, brown pickup truck. With Peterson driving, the three first rode by a convenience store in Cherokee County, making several passes as Rebecca determined whether and how she wanted to rob the store. Peterson then dropped Rebecca off at the store, and Rebecca put on a ski mask, entered the store, and robbed the cashier at gunpoint. Rebecca soon ran back to the truck, telling the other two women that she had robbed the store.

Rebecca then drove to a restaurant in Cobb County (the locus of the crime at issue here), and Peterson and Rebecca discussed how Peterson could rob the restaurant. Peterson then exited the truck with a handgun, put on a ski mask, entered the restaurant, pointed the gun at the occupants, demanded money, and took money from the cash register. Peterson then ran back to the truck, out of breath, and Rebecca drove the truck away. Rebecca then drove to Baxter's grocery store, which she also robbed at gunpoint, letting Peterson drive after she ran back to the truck.

As the women pulled away from Baxter's store, the store clerk called police and described the truck, number of people in the truck, their location, and their direction of travel. The police dispatcher

---

[1] *Eady v. State*, 256 Ga. App. 696 (569 SE2d 603) (2002).

issued a BOLO ("be on the lookout") over police radio, passing along this information to officers in the area. Officer Clint Thompson, who was on duty in the area, heard the BOLO and shortly thereafter spotted the three women in the truck, who matched the description and direction of travel stated in the BOLO. He began following their truck, called for backup, and pulled in behind them after they pulled into a convenience store parking lot.

In the parking lot, he turned on his blue lights, unholstered his weapon, and ordered the driver (Peterson) to get out of the truck. Officer Thompson immediately asked the driver if she had just come from Baxter's grocery, and the driver replied that she had. The officer then handcuffed the driver and, after recognizing Rebecca (a former sheriff's deputy) as his former supervisor, handcuffed Rebecca as backup arrived to help secure Amanda.

Police arrested all three women and, upon searching the truck, found two handguns in the glove box and a wad of cash stuffed into a hole in the dashboard. Rebecca and Peterson were charged with the armed robbery of the Cobb County restaurant;[2] Peterson pled guilty and Rebecca was tried by a jury, which found her guilty. Rebecca's motion for new trial was then denied, giving rise to this appeal.

1. Rebecca contends that the evidence was insufficient to support her conviction, in that it failed to corroborate an accomplice's testimony of Rebecca's participation in the crime. We disagree.

> The standard of review for sufficiency of the evidence [in a criminal case] is set out in *Jackson v. Virginia*.[3] The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In addition, appellant no longer enjoys a presumption of innocence.

*Taylor v. State*.[4]

It is undisputed that Rebecca did not herself take the handgun and demand money from the Cobb County restaurant. Instead, she was convicted as a party to Peterson's robbery. See OCGA § 16-2-20. "Whether a person is a party to a crime may be inferred from that person's presence, companionship, and conduct before, during, and after the crime." (Punctuation omitted.) *Brown v. State*.[5]

---

[2] Rebecca was separately charged with the robberies at the convenience store and Baxter's grocery store. Those charges are not at issue in this appeal.

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] *Taylor v. State*, 266 Ga. App. 818 (598 SE2d 122) (2004).

[5] *Brown v. State*, 278 Ga. 724, 726 (1) (609 SE2d 312) (2004).

It is well-settled in this State that to sustain a conviction in a felony case based upon the testimony of an accomplice, the testimony of the accomplice must be corroborated by independent evidence tending to connect the accused with the crime or leading to an inference that the accused is guilty. Slight evidence from an extraneous source identifying the accused as a participator in the criminal act will be sufficient corroboration of the accomplice to support a verdict.

(Punctuation and footnote omitted.) *Williams v. State.*[6] "Moreover, an accomplice's testimony may be corroborated by the testimony of a second accomplice." (Punctuation omitted.) *Heard v. State.*[7]

Here, Amanda Boone, who rode in the truck during all three robberies, testified that Rebecca herself performed the robberies immediately prior to and following the restaurant robbery. She also testified that, with respect to the restaurant robbery (at issue here), Rebecca drove Peterson in Rebecca's truck to the restaurant. She also testified that Rebecca discussed with Peterson how Peterson should rob the restaurant, and that Rebecca drove the truck away upon Peterson's hasty return from the restaurant. According to Amanda, Rebecca later told Amanda, "if we get caught, do not speak." This was sufficient to authorize an inference of Rebecca's participation in the restaurant robbery. See *Brown v. State*, supra, 278 Ga. at 726 (1).

Although Amanda was not charged in the restaurant robbery, we assume for purposes of this discussion that she could be deemed an accomplice.[8] Therefore, in addition to Amanda's testimony as to Rebecca's participation in the restaurant robbery, the State was required to introduce at least "slight" corroborating evidence tending to show Rebecca's participation in Peterson's crime.

The State offered testimony from Peterson, who also testified that Rebecca was in the truck before and after Peterson robbed the restaurant. There was also testimony from Peterson and witnesses to the crimes supporting an inference that Peterson used the same handgun that Rebecca used in the prior and subsequent robberies. Finally, there was evidence from witnesses to all three robberies that showed that the crimes were performed in the same manner (by a woman, in a mask, with a handgun, demanding money from the cashier, fleeing in a waiting pickup truck) on the same day. In light of this evidence, we hold that the State satisfied its burden to provide at least "slight" evidence corroborating Amanda's account of Rebecca's

---

[6] *Williams v. State*, 280 Ga. 584, 585-586 (1) (630 SE2d 370) (2006).

[7] *Heard v. State*, 257 Ga. App. 505, 506 (1) (571 SE2d 524) (2002).

[8] If she is not an accomplice, no corroboration would be needed.

participation in the robbery of the restaurant. See *Williams v. State*, supra, 280 Ga. at 586 (1).

2. Rebecca also contends that the trial court erred in denying her motion to suppress evidence seized from her truck during an initial search of the vehicle done at the time of her arrest, and a subsequent inventory search also done at the scene prior to impounding her vehicle. We disagree.

> While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where [as here] the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Citations omitted.) *Vansant v. State.*[9]

> Although an officer may conduct a brief investigative stop of a vehicle, such a stop must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The U. S. Supreme Court recognized the difficulty in defining the elusive concept of what cause is sufficient to authorize police to stop a person, and concluded that the essence of the elusive concept was to take the totality of the circumstances into account and determine whether the detaining officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity.

(Citations and punctuation omitted.) *Vansant v. State*, supra, 264 Ga. at 320 (2).

Here, the responding officer turned on his blue lights and stopped Rebecca's truck upon hearing a recent BOLO that described the truck's color, number of occupants, road of travel, and direction of travel. "This detailed information provided the [officer] with the requisite articulable suspicion to warrant the investigative stop and detention." *Brown v. State*, supra, 278 Ga. at 727 (2). See *Faulkner v. State*;[10] *McNair v. State.*[11]

Further investigating, the officer asked the truck's driver whether she had come from Baxter's grocery, where the armed robbery had

[9] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

[10] *Faulkner v. State*, 277 Ga. App. 702, 704 (627 SE2d 423) (2006).

[11] *McNair v. State*, 267 Ga. App. 872, 873-874 (1) (600 SE2d 830) (2004).

just occurred and the origin of the BOLO to which the officer had responded. Upon hearing the driver's affirmative response, the officer ordered the driver out and began separating the occupants and handcuffing them. The officer was authorized to do this, because

> when stopping individuals for questioning, law enforcement officers are entitled to take reasonable steps to protect their own safety. It is not unreasonable for officers stopping a car reportedly involved in numerous violent crimes to temporarily, and separately, detain the occupants.

(Citation omitted.) *Brown v. State*, supra, 278 Ga. at 727 (2).

The officer then asked the driver if there were weapons in the truck, and the driver said, "Yes, we have a couple of guns." At that point, the officer had probable cause to arrest the vehicle's occupants: he had encountered a truck matching the description in the BOLO, with the same number of occupants (three) as advised in the BOLO, traveling on the road and in the direction identified in the BOLO, from a location known by the officer to be the scene of an armed robbery involving guns, and an occupant told the officer there were guns in the truck. See *Brown v. State*, supra, 278 Ga. at 727 (2); *Ross v. State*[12] ("[a]n officer may make a warrantless arrest and search if, at the time of the arrest, he has probable cause to believe the accused has committed or is committing an offense").

As stated by the United States Supreme Court, "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton*.[13] See *State v. Heredia*[14] ("[p]olice officers may search the passenger compartment of a car, as well as closed containers inside it, after the arrest of the car's occupant"). Accordingly, because of the lawful arrest of the truck's occupants for armed robbery, police were authorized to search the truck and find the two handguns in the glove compartment and the wad of cash stuffed into a hole in the truck's dashboard. "Because the search of the [vehicle] and the closed containers within it was valid incident to [Rebecca's] arrest, we need not address the impoundment issue." Id. Accordingly, we discern no error by the trial court in denying Rebecca's motion to suppress.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

---

[12] *Ross v. State*, 255 Ga. App. 462, 464 (566 SE2d 47) (2002).
[13] *New York v. Belton*, 453 U. S. 454, 460 (101 SC 2860, 69 LE2d 768) (1981).
[14] *State v. Heredia*, 252 Ga. App. 89, 91 (3) (555 SE2d 91) (2001).

DECIDED OCTOBER 24, 2006.

*Patrick G. Longhi*, for appellant.

*Patrick H. Head, District Attorney, Amy H. McChesney, Assistant District Attorney*, for appellee.