**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**November 6, 2013**

# In the Court of Appeals of Georgia

A13A1540. JOHNSON v. THE STATE.

MILLER, Judge.

Following a trial, a DeKalb County jury convicted Kelvin Johnson of kidnapping with bodily injury (OCGA § 16-5-40 (d) (4)), aggravated assault, (OCGA § 16-5-21 (a) (2)) and one count of possession of a firearm in the commission of a crime (OCGA § 16-11-106 (b) (1)). Johnson appeals from the denial of his motion for new trial, contending that the trial court erred by denying his motion to suppress because the officer lacked reasonable suspicion to stop the vehicle in which he was riding as a passenger. For the reasons that follow, we affirm.

On appeal from a trial court's ruling on a motion to suppress or a motion in limine, we may consider all relevant and admissible evidence of record introduced at the motion hearing or during trial. While a trial court's findings as to disputed facts will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Citations and punctuation omitted.) *Walker v. State*, 314 Ga. App. 67 (1) (722 SE2d 887) (2012).

So viewed, the evidence shows that around midnight on November 1-2, 2010, Johnson and three other men went to the victim's house. The victim knew one of the men, codefendant Germaine Gaither, but did not know Johnson or the others. The victim agreed to go with Gaither to Aspen Woods, a nearby apartment complex, because he believed they were going to smoke some marijuana.

Upon arriving at the apartment complex, Gaither left the car and informed the others he would go speak to his contact so they could smoke marijuana. Gaither returned a few minutes later and informed everyone in the car that it was okay to get out. The men, including the victim and Johnson, exited the vehicle and walked toward the apartment building but did not enter.

After waiting a while to be let inside an apartment, Gaither said he needed to use an ATM. Johnson and the group walked back towards the car, with the victim in front of the others. The victim was then struck from behind and fell to the ground, where he was kicked and punched. The victim's face was then covered with duct tape and his arms and legs were also bound with duct tape. The victim was carried to the car with a shotgun pressed against the back of his head and placed in the trunk.

Around the same time, an Aspen Woods resident looked out her window and saw two men standing by a small, silver or gray-colored, four-door vehicle, and one of the men appeared to be hiding an object along the side of his leg. The car was parked under an illuminated light pole. Based on the men's furtive movements around the car, the resident initially believed the men were going to break into the vehicle. The resident called 911 and stayed on the phone with the 911 operator while she described her observations. The resident witnessed the men walking or hurrying between the apartment building and the car, and she stated that she believed the men were robbing somebody's apartment and carrying items to the car. The resident then saw all four men, described as four black males wearing black clothing, get into the car and drive off and turn right out of the apartment complex onto Candler Road.

While the resident was talking to the 911 operator, a nearby police officer was dispatched to the location. Dispatch informed the officer of a possible burglary in progress involving four black males in black clothing in a silver vehicle. The officer parked his patrol car near the only exit/entrance to the apartment complex. Almost immediately thereafter, the officer observed a silver vehicle, which matched the description given by dispatch, approach his patrol car and turn right out of the apartment complex. As the car passed the officer, he observed that the occupants matched the description given by dispatch. The officer then followed the car to an intersection along Candler Road, where he and other responding officers conducted a stop. The stop occurred only a few minutes after the resident observed the four males get into the vehicle and leave the apartment complex.

One officer approached the stopped vehicle and spoke with the passenger at the driver side, asking if there were any weapons in the vehicle. The passenger answered in the affirmative and the officer saw a shotgun in between the passenger's legs. Johnson was taken out of the vehicle, searched and placed in a patrol car. Officers found several shot-gun shells in Johnson's front pocket. The officers removed the other men from the vehicle and searched the car, finding the shotgun, a rifle case, and a ski mask. During the search, the officers noticed a gap between the rear seat and the

4

trunk and observed what appeared to be a person in the trunk. The trunk was opened and the victim was discovered hog-tied with duct tape, bruised, and bleeding. The 911 caller, who had arrived at the scene within three minutes of placing the call, testified that the car and suspects matched her observations at the apartment complex.

On appeal, Johnson contends that the trial court erred in denying his motion to suppress because the resident's 911 call was insufficient to provide reasonable articulable suspicion required for a stop.[1] We disagree.

"To establish reasonable suspicion to make an investigative stop, the totality of the circumstances must show that the officer had specific and articulable facts

---

[1] Johnson also argues that the trial court erred in denying his motion to suppress because the officers effectively arrested him without probable cause when, after stopping the vehicle, they forcibly removed him from the vehicle and placed him in handcuffs and into a patrol vehicle. Johnson did not specifically raise this issue in his motion to suppress and, by adopting the arguments of his co-defendants, he indicated that he was only challenging the legal basis of the stop. As a result, Johnson has waived his challenge that his arrest was not supported by probable cause. See *Young v. State*, 282 Ga. 735, 736-738 (653 SE2d 725) (2007); *State v. Gomez*, 266 Ga. App. 423, 425 (2) (597 SE2d 509) (2004). Even if it was not waived, Johnson's claim is without merit. Officers may handcuff suspects during an investigatory stop without transforming the detention into a de facto arrest, when such action is reasonable under the circumstances to protect themselves. *Gray v. State,* 296 Ga. App. 878, 879-880 (1) (676 SE2d 36) (2009). The police officers' actions were reasonable in this case because they were responding to a possible burglary and observed a shotgun in the stopped vehicle.

which, taken together with rational inferences from those facts provided a particularized and objective basis for suspecting the particular person stopped of criminal activity." (Citation and punctuation omitted.) *Johnson v. State*, 313 Ga. App. 137, 138 (1) (720 SE2d 654) (2011). "Although the primary means by which officers acquire reasonable suspicion is personal observation, information acquired from an informant that exhibits a sufficient indicia of reliability can also be the basis for reasonable suspicion." (Citation omitted.) *Slocum v. State*, 267 Ga. App. 337, 338 (599 SE2d 299) (2004).

Johnson argues that the police officers were required to corroborate the information given by the 911 caller because she was an "anonymous tipster." Contrary to Johnson's argument, however, the 911 caller was a concerned citizen who resided in the apartment complex and believed a burglary had occurred. "Information received from a concerned citizen is inherently more credible and reliable than that received from an anonymous tipster; indeed, it is deemed reliable." (Footnote omitted.) *Fleming v. State*, 281 Ga. App. 207, 208-209 (2) (635 SE2d 823) (2006).

Moreover, regardless of the identity of the 911 caller, the officer who responded to the apartment complex received the information about the possible burglary from dispatch.

A dispatcher who reports a crime at a specified location gives police an articulable suspicion to investigate and detain individuals at the scene, particularly where police observations on arriving at the scene corroborate the dispatcher's report. *Even if the dispatcher's information comes from a citizen or an unidentified informant,* the investigatory detention is valid, for patrolling officers are not required to question dispatchers about the source of the information. Further, corroboration only solidifies the existence of an articulable suspicion.

(Citations and punctuation omitted.) *Prather v. State*, 279 Ga. App. 873, 874 (1) (633 SE2d 46) (2006).

Here, the evidence shows that the responding officer observed a silver vehicle turning right out of the complex at about the same time dispatch relayed the same information to him about the suspects' movements. The officer also observed that the vehicle contained four black males wearing all black, which matched the description given by dispatch. The evidence also shows that at the time of the call, there was very little traffic on the roadway near the apartment complex. Based on the totality of these circumstances, the officers had the requisite articulable suspicion to justify the investigative stop. See *Boone v. State*, 282 Ga. App. 67, 70 (2) (637 SE2d 795) (2006) (officer had the requisite articulable suspicion necessary to conduct a traffic stop shortly after receiving a be-on-the-lookout ("BOLO") describing the vehicle's color, number of occupants, road and direction of travel); *McNair v. State*, 267 Ga.

7

App. 872, 874 (1) (600 SE2d 830) (2004) (officer had an objective, reasonable suspicion of criminal activity to conduct a traffic stop of a car that matched description given in a BOLO alert and was traveling from the direction of the crime scene five minutes after the alert was issued).

Accordingly, the trial court did not err in denying Johnson's motion to suppress.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*