**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 27, 2014**

# In the Court of Appeals of Georgia

A13A2062. KINSEY v. THE STATE.
A14A0116. WHITE v. THE STATE.

MILLER, Judge.

Following a jury trial, Deandre Antwan Kinsey and Tevon White were convicted of kidnapping with bodily injury (OCGA § 16-5-40 (d) (4)), aggravated assault (OCGA § 16-5-21 (a) (2) (2010), and one count of possession of a firearm in the commission of a crime (OCGA § 16-11-106 (b) (1)).[1] Kinsey and White appeal from the denial of their motions for new trial. In Case No. A13A2062, Kinsey contends that the trial court erred in denying his motion to suppress, that the evidence

---

[1]Kinsey and White were tried with co-defendants Kelvin Johnson and Geremy Gaither. The jury found Kinsey and White not guilty of another count of possession of a firearm in the commission of a crime. Johnson's appeal from the trial court's denial of his motion to suppress was affirmed by this Court. *Johnson v. State*, __ Ga. App. __ 2013 (751 SE2d 141) (Case No. A13A1540, decided November 6, 2013).

was insufficient to support his convictions, and that the trial court erred in refusing to give a jury charge on mere presence. In Case No. A14A0116, White contends that the trial court erred in denying his motion to suppress, in allowing the book-in photo to be introduced into evidence, and in refusing to charge the jury on mere presence. White also contends that the evidence was insufficient to support his convictions. Discerning no error, we affirm the judgments in both cases.

On appeal from a criminal conviction, we view the record in the light most favorable to the conviction.[2] The relevant facts are set forth in *Johnson*, supra, which provides as follows:

> [A]round midnight on November 1-2, 2010, [Kinsey, White] and [two] other men went to the victim's house. The victim knew one of the men, co-defendant Germaine Gaither, but did not know . . . the others. The victim agreed to go with Gaither to Aspen Woods, a nearby apartment complex, because he believed they were going to smoke some marijuana.
>
> Upon arriving at the apartment complex, Gaither left the car and informed the others he would go speak to his contact so they could smoke marijuana. Gaither returned a few minutes later and informed everyone in the car that it was okay to get out. The men, including the

---

[2]*Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

victim and [Kinsey and White], exited the vehicle and walked toward the apartment building but did not enter.

After waiting a while to be let inside an apartment, Gaither said he needed to use an ATM. . . . [T]he group walked back toward the car, with the victim in front of [Kinsey, White, and the other co-defendants]. The victim was then struck from behind and fell to the ground, where he was kicked and punched [in the back and the back of the head]. The victim's face was then covered with duct tape and his arms and legs were also bound with duct tape. [None of the four individuals present with the victim offered to help him.] The victim was carried to the car with a shotgun pressed against the back of his head and placed in the trunk.

Around the same time, an Aspen Woods resident looked out her window and saw two men standing by a small, silver or gray-colored, four-door vehicle, and one of the men appeared to be hiding an object along the side of his leg. The car was parked under an illuminated light pole. Based on the men's furtive movements around the car, the resident initially believed the men were going to break into the vehicle. The resident called 911 and stayed on the phone with the 911 operator while she described her observations. The resident witnessed the men walking or hurrying between the apartment building and the car, and she stated that she believed the men were robbing somebody's apartment and carrying items to the car. The resident then saw all four men, described as four black males wearing black clothing, get into the car and drive off and turn right out of the apartment complex onto Candler Road.

While the resident was talking to the 911 operator, a nearby police officer was dispatched to the location. Dispatch informed the officer of a possible burglary in progress involving four black males in black clothing in a silver vehicle. The officer parked his patrol car near the only exit/entrance to the apartment complex. Almost immediately thereafter, the officer observed a silver vehicle, which matched the description given by dispatch, approach his patrol car and turn right out of the apartment complex. As the car passed the officer, he observed that the occupants matched the description given by dispatch. The officer then followed the car to an intersection along Candler Road, where he and other responding officers conducted a stop. The stop occurred only a few minutes after the resident observed the four males get into the vehicle and leave the apartment complex.

One officer approached the stopped vehicle and spoke with the passenger at the driver side, asking if there were any weapons in the vehicle.[3] [Johnson] answered in the affirmative and the officer saw a shotgun in between [his] legs. Johnson was taken out of the vehicle, searched and placed in a patrol car. Officers found several shotgun shells in Johnson's front pocket. [Kinsey was seated in the back with a gun case between his legs and duct tape on his fingertips. Kinsey was taken out of the vehicle, searched and placed in a patrol car.] The officers removed the other men from the vehicle and searched the car,

---

[3] Geremie Gaither was driving; appellant Kelvin Johnson was in the front passenger seat; co-defendant Deandre Kinsey was in the rear passenger seat behind Johnson; and co-defendant Tevon White was in the rear passenger seat behind driver Gaither.

finding the shotgun, a rifle case, and a ski mask. During the search, the officers noticed a gap between the rear seat and the trunk and observed what appeared to be a person in the trunk. The trunk was opened and the victim was discovered hog-tied with duct tape, bruised, and bleeding. The 911 caller, who had arrived at the scene within three minutes of placing the call, testified that the car and suspects matched her observations at the apartment complex.

*Johnson*, supra, at *2-*5.

## Case No. A13A2062

1. In his first enumeration of error, Kinsey argues that the trial court erred in denying his motion to suppress because the resident's 911 call did not provide sufficient articulable suspicion required for a stop. We disagree.

> On appeal from a trial court's ruling on a motion to suppress or a motion in limine, we may consider all relevant and admissible evidence of record introduced at the motion hearing or during trial. While a trial court's findings as to disputed facts will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Citations and punctuation omitted.) *Walker v. State*, 314 Ga. App. 67 (1) (722 SE2d 887) (2012).

5

To establish reasonable suspicion to make an investigative stop, the totality of the circumstances must show that the officer had specific and articulable facts which, taken together with rational inferences from those facts provided a particularized and objective basis for suspecting the particular person stopped of criminal activity.

(Citation and punctuation omitted.) *Johnson v. State*, 313 Ga. App. 137, 138 (1) (720 SE2d 654) (2011). "Although the primary means by which officers acquire reasonable suspicion is personal observation, information acquired from an informant that exhibits a sufficient indicia of reliability can also be the basis for reasonable suspicion." (Citation omitted.) *Slocum v. State*, 267 Ga. App. 337, 338 (599 SE2d 299) (2004).

(a) Kinsey argues that the police officers were required to corroborate the information given by the 911 caller. Contrary to Kinsey's argument, however, the 911 caller was a concerned citizen who resided in the apartment complex and believed a burglary had occurred. "Information received from a concerned citizen is inherently more credible and reliable than that received from an anonymous tipster; indeed, it is deemed reliable." (Footnote omitted.) *Fleming v. State*, 281 Ga. App. 207, 208-209 (2) (635 SE2d 823) (2006). Moreover, regardless of the identity of the 911 caller, the

6

officer who responded to the apartment complex received the information about the possible burglary from dispatch.

> A dispatcher who reports a crime at a specified location gives police an articulable suspicion to investigate and detain individuals at the scene, particularly where police observations on arriving at the scene corroborate the dispatcher's report. *Even if the dispatcher's information comes from a citizen or an unidentified informant,* the investigatory detention is valid, for patrolling officers are not required to question dispatchers about the source of the information. Further, corroboration only solidifies the existence of an articulable suspicion.

(Citations and punctuation omitted.) *Prather v. State*, 279 Ga. App. 873, 874 (1) (633 SE2d 46) (2006).

Here, the evidence shows that the responding officer observed a silver vehicle turning right out of the complex at about the same time dispatch relayed the same information to him about the suspects' movements. The officer observed that the vehicle contained four black males wearing all black, which matched the description given by dispatch. The evidence also shows that at the time of the call, there was very little traffic on the roadway near the apartment complex. Based on the totality of these circumstances, the officers had the requisite articulable suspicion to justify the investigative stop. See *Boone v. State*, 282 Ga. App. 67, 70 (2) (637 SE2d 795) (2006) (officer had the requisite articulable suspicion necessary to conduct a traffic

7

stop shortly after receiving a be-on-the-lookout ("BOLO") describing the vehicle's color, number of occupants, road and direction of travel); *McNair v. State*, 267 Ga. App. 872, 874 (1) (600 SE2d 830) (2004) (officer had an objective, reasonable suspicion of criminal activity to conduct a traffic stop of a car that matched description given in a BOLO alert and was traveling from the direction of the crime scene five minutes after the alert was issued).

(b) Kinsey also argues that the trial court erred in denying his motion to suppress because the officers effectively arrested him without probable cause when, after stopping the vehicle, they forcibly removed him from the vehicle and placed him in handcuffs and into a patrol vehicle. Kinsey did not specifically raise this issue in his motion to suppress and, by adopting the arguments of his co-defendants, he indicated that he was only challenging the legal basis of the initial stop. As a result, Kinsey has waived his challenge that his arrest was not supported by probable cause. See *Young v. State*, 282 Ga. 735, 736-738 (653 SE2d 725) (2007); *State v. Gomez*, 266 Ga. App. 423, 425 (2) (597 SE2d 509) (2004).

2. Kinsey further contends that the evidence was insufficient to support his convictions for kidnapping with bodily injury, aggravated assault, and possession of a firearm in the commission of a crime. We disagree.

When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Citation, punctuation and emphasis omitted.) *Patterson v. State*, 272 Ga. App. 675, 676 (1) (613 SE2d 200) (2005). "As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict." (Footnote omitted.) *Heard v. State*, 299 Ga. App. 44, 44 (1) (681 SE2d 701) (2009). Additionally, "the testimony of a single witness is generally sufficient to establish a fact." *Boyt v. State*, 286 Ga. App. 460, 461 (1) (2007) (649 SE2d 589) (2007).[4]

Furthermore, "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." OCGA § 16-2-20 (a). Although

mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may

---

[4]See OCGA § 24-4-8.

be inferred. If the defendant had knowledge of the intended crime and shared in the criminal intent of the principal actor, he is an aider and abettor. Hence, if the defendant was at the scene and did not disapprove or oppose the commission of the offense, a trier of fact may consider such conduct in connection with prior knowledge and would be authorized to conclude the defendant assented to the commission of the offense, that he lent his approval to it, thereby aiding and abetting the commission of the crime.

(Citations and punctuation omitted.) *McWhorter v. State*, 198 Ga. App. 493, 493 (1) (402 SE2d 60) (1991). See also *Bell v. State*, 156 Ga. App. 190 (274 SE2d 153) (1980) (one who intentionally aids or abets the commission of a crime by another is equally guilty with the principal.)

(a) Kidnapping with Bodily Injury

"A person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such other person against his or her will." OCGA § 16-5-40 (a).

For the offense of kidnapping to occur, slight movement shall be sufficient; provided, however, that any such slight movement of another person which occurs while in the commission of any other offense shall not constitute the offense of kidnapping if such movement is merely incidental to such other offense.

10

OCGA § 16-5-40 (b) (1).[5] Bodily injury is accomplished by inflicting any physical injury upon the victim's body, however slight. *Green v. State*, 193 Ga. App. 894, 896 (1) (389 SE2d 358)(389 SE2d 358) (1989).

Here, the record contains evidence from which a jury could find that Kinsey was a party to the crime of kidnapping with bodily injury against the victim. The victim identified Kinsey at trial as one of four men who beat him, held a shotgun to the his head, duct-taped his head and body, put him in the trunk of a car and drove off. A responding officer testified that Kinsey was in the same car with the victim. . Accordingly, the evidence was sufficient to support Kinsey's conviction for kidnapping with bodily injury. See *McWhorter*, supra, 198 Ga. App. at 493 (1); *Williams v. State*, 307 Ga. App. 675, 678 (1) (705 SE2d 906) (2011) (asportation for kidnapping offense occurred when defendant dragged the victim into another room after assaulting the victim; movement of victim from one room to another was not inherent part of assault, which was completed when defendant pointed gun at and grabbed victim, and movement, even though minimal, created additional danger by enhancing defendant's control over victim); *Sipplen v. State*, 312 Ga. App. 342, 344

---

[5]A person convicted of kidnapping shall be punished by life imprisonment or death if the person received bodily injury. OCGA § 16-5-40 (d) (4).

11

(1) (718 SE2d 571) (2011) (evidence was sufficient to convict defendant as party to kidnapping when defendant followed kidnapper and victim in another car).

(b) Aggravated Assault

A person commits an aggravated assault in violation of OCGA § 16-5-21 when he "assaults with a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a) (2).

Here, the victim testified that Kinsey was among the group of men who struck the victim in the back of the head with something that "felt like more than a fist," covered his entire face in duct tape, causing difficulty breathing, kicked and punched him and held a shotgun to his head. This evidence was sufficient to authorize a jury to find Kinsey guilty beyond a reasonable doubt as a party to the crime of aggravated assault. See *Romero v. State*, 307 Ga. App. 348, 350-351 (705 SE2d 195) (2010) (evidence sufficient to show that defendant was a party to aggravated assault where defendant accompanied attacker to the crime scene and stood by while another man attacked the victim).

(c) Possession of a Firearm in the Commission of a Crime

12

A person is guilty of possession of a firearm in the commission of a crime when he is found beyond a reasonable doubt to "have on or within arm's reach of his or her person a firearm . . . during the commission of, or the attempt to commit . . . [a]ny crime against or involving the person of another[.]" OCGA § 16-11-106 (b) (1).

As laid out above, the victim identified Kinsey as one of four men who, acting together, held a shotgun to the victim's head, duct-taped his head and body and put the victim in the trunk of a silver car and drove off. Additionally, a sawed-off shotgun and a rifle were found in the car in which Kinsey was a passenger. Based on this evidence, a jury could readily infer that Kinsey was a party to the crime of possession of a firearm during both the kidnapping and assault of the victim See *Victrum* v. *State*, 203 Ga. App. 377, 379 (3) (416 SE2d 740) (1992) (co-defendant was within arm's reach of two pistols during commission of crime, therefore, defendant was guilty of offense as party to crime); *Sipplen*, supra, at 344 (1) (evidence was sufficient to convict defendant as party to crimes of kidnapping and possession of firearm when defendant followed kidnapper, who had a gun, and victim in another car).

3. Kinsey also contends that the trial court abused its discretion in failing to give a jury charge on mere presence as requested by defense counsel. We do not agree.

13

"[J]ury instructions must be read and considered as a whole in determining whether the charges contained error." See *Alexander v. State*, 308 Ga. App. 245, 245 (308 Ga. App. 245) (2011). Moreover, "[t]he rule that mere presence at the scene of a crime is insufficient to convict is actually a corollary to the requirement that the State prove each element of the offense charged." (Citations and footnotes omitted.) *Hulsey v. State*, 284 Ga. App. 461, 462 (2) (643 SE2d 888) (2007). "It is not reversible error to fail to charge in the exact language requested when the charge given adequately covers the correct legal principles." (Citations and punctuation omitted.) *Head v. State*, 261 Ga. App. 185, 187-188 (2) (582 SE2d 164) (2003).

Here, the trial court clearly instructed the jury to treat each individual defendant as separate and distinct from each other. The trial court charged the jury that the guilt of any one of the defendants is determined based on the facts showing what part, if any, he had in the commission of the crimes charged. It further charged that the guilt of one person named in the indictment creates no presumption of guilt as to any other defendant. The trial court also instructed that "[n]o person shall be convicted of any crime unless and until each element of the crime as charged is proven beyond a reasonable doubt," and that the burden of proof rests upon the State to prove every material allegation of the indictment and essential element of the

14

crimes charged beyond a reasonable doubt. The trial court further charged that "to warrant a conviction . . . the proven facts must not only be consistent with the theory of guilt, but must also exclude every other reasonable theory other than the guilt of the accused. The comparative weight of circumstantial evidence and direct evidence, on any given issue, is a question of fact for you, the jury, to decide."

We hold that the foregoing jury charges, when read as a whole, were complete and fair, and in view of them, the trial court did not reversibly err in refusing to give a separate charge on mere presence. *Muhammad v. State*, 243 Ga. 404, 406 (1) (254 SE2d 356) (1979) (where trial court correctly instructed the jury on the duty of the state to prove each and every element of the crime beyond a reasonable doubt, trial court's refusal to instruct the jury on "mere presence" of the accused at the scene of the crime did not constitute reversible error).

## Case No. A14A0116

4. In his first enumeration of error, White argues that the police lacked the requisite articulable suspicion to stop the vehicle in which White was a passenger.

As set out above in Division 1, the officers had the requisite articulable suspicion to stop the vehicle in which White was a passenger. *Prather*, supra, 279 Ga.

App. at 874 (1). Because the police had the requisite articulable suspicion to conduct the stop, the trial court did not err in denying White's motion to suppress.

5. White next argues that the trial court erred in allowing into evidence, over his objection, the photograph taken following White's arrest. We disagree.

"When a trial court is faced with the challenge that the probative value of evidence is outweighed by its tendency to unduly prejudice the jury, it must exercise it discretion in determining admissibility." (Punctuation and citation omitted.) *Stokes v. State*, 289 Ga. 702, 706 (4) (715 SE2d 81) (2011). "Whether to admit evidence is a matter resting in the trial court's sound discretion, and evidence that is relevant and material to an issue in the case is not rendered inadmissible because it incidentally places the defendant's character in issue." (Punctuation and citation omitted.) *Alexis v. State*, 313 Ga. App. 283, 286-287 (2) (2011). "In general, mug shots of a defendant taken after arrest with regard to the crime for which he is currently being prosecuted do not prejudice the defendant." *Sharpe v. State*, 288 Ga. 565, 567 (4) (707 SE2d 338) (2011).

Notwithstanding White's argument to the contrary, his book-in photograph was almost completely neutral in appearance, did not reveal that White was in custody or in handcuffs when he was photographed, and was not a photograph related to a

previous crime. The trial court specifically noted that the photograph was probative of the fact that White was wearing black when he was apprehended, as described by 911 tipster Pinkson. Under these circumstances, the trial court did not abuse its discretion in admitting the book-in photograph of White.

6. White contends that the trial court erred in refusing to charge the jury on the law regarding "mere presence" at the scene of a crime, despite his request to do so. White's arguments have been considered and rejected above in Division 2.

7. White also argues that the evidence was insufficient to support the verdict against him.

(a) Aggravated Assault and Kidnapping with Bodily Injury

As discussed above, White was among the four individuals who hit the victim about the head and back, pressed a shotgun to his head, deposited him into the trunk of a car and drove off. Therefore, the evidence was sufficient to support the verdicts against White for aggravated assault and kidnapping with bodily injury. See *Romero*, supra, 307 Ga. App. at 351.

(b) Possession of a Firearm in the Commission of a Crime

As stated above in Division 2 (c), a person is guilty of possession of a firearm in the commission of a crime when he is found beyond a reasonable doubt to "have

17

on or within arm's reach of his or her person a firearm . . . during the commission of, or the attempt to commit...[a]ny crime against or involving the person of another[.]" OCGA § 16-11-106 (b) (1). Further, pursuant to O.C.G.A. § 16-2-20 (a), a defendant may properly be convicted of possession of a firearm during the commission of a crime on the ground that he was a party or aider or abettor to the offense. See *Victrum*, supra, 203 Ga. App. 379 (3). In this case, White was in the car with the other co-defendants when the vehicle, which contained two shotguns, was stopped. The shotguns were within his reach, and one officer testified that White was in actual possession of a sawed-off shotgun. The evidence was therefore sufficient to convict White of possession of a firearm during the commission of the victim's kidnapping.

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*