A99A2232. REYES v. THE STATE.
(529 SE2d 192)

ANDREWS, Presiding Judge.

Stacy Louise Reyes appeals from the judgment entered after a jury found her guilty of reckless conduct for failing to supervise her three-year-old daughter Tenya. We find no reversible error and affirm.

The evidence at trial, taken in the light most favorable to support the verdict, was as follows. Three-year-old Tenya Reyes was found unconscious in a neighbor's yard after apparently being attacked by an animal, probably a dog. The doctor on duty who examined her said that she was soaked with rainwater and blood and her body temperature was 87.6 degrees Fahrenheit. He stated that she had lacerations and nail marks over her whole body, had lost between 20 and 40 percent of her blood, and responded only to deep pain. The doctor said the injuries had occurred more than an hour before she was brought to the hospital. He based this conclusion on the amount of time it takes for the body's temperature to go down ten degrees and the fact that her blood had congealed and there was no active bleeding when he examined her.

The officer who investigated the incident testified that he found

the spot where the attack occurred and found a child's pants and shoe in a neighbor's yard. The pants and shoe were wet. The officer said it rained early that morning but stopped between 9:30 and 10:00 a.m. at the latest. The officer was able to trace the path Tenya took that morning before the attack occurred. He stated that she had walked down her driveway, then walked down Old Tennessee Road along a drainage ditch for about 100 feet. She also walked past a shed with a lot of boards with nails in them. The officer also stated that the temperature that morning at 10:00 a.m. would have been about 60°F.

Tenya's grandmother testified that Reyes called her around 10:30 that morning and said the child was missing. The grandmother went outside to look for her and found Tenya lying in the yard, unconscious and bleeding.

A neighbor testified that she saw Tenya that morning running along the road with two little puppies sometime between 9:00 and 9:30. Tenya was by herself, and there were no adults around at the time.

The triage nurse at the hospital said she questioned Tenya's grandmother about what had happened to the little girl. The nurse said Tenya's grandmother told her the child had been sent over to her house at 9:00 that morning and was found at 11:00 a.m.

The Department of Family & Children Services (DFCS) investigator testified that she retraced the route Tenya took that day and there was no sidewalk on the road. Also, a deep drainage ditch containing standing water ran alongside the road. In the yard Tenya walked through, there was broken glass, lumber, paint supplies, nails and chemicals.

The State also introduced similar transaction evidence. A neighbor testified that in December 1996, he found a little boy and girl playing in the street at the end of his driveway. He said the boy was about five or six and the little girl was only two or three. The neighbor asked the children where they lived, and he took them up the street to their house, about 150 to 200 yards away. He said the mother, Reyes, told him the children had been at home just a few minutes ago. The neighbor told her the children had been in the street five to ten minutes and she needed to keep a closer eye on them.

Another neighbor testified that she saw Tenya walking up to her grandmother's house by herself when her grandmother was not home. The neighbor's son-in-law took Tenya back home and said that when he arrived at the house, Reyes was just getting up from the sofa and looked like she had been asleep.

Another neighbor said that she had seen Tenya running across the road by herself about three or four times and had taken Tenya

home because she was too young to be out in the street. She said that one of the times she took Tenya home, Reyes was asleep on the couch.

Reyes testified in her own defense. She said that after getting the two older children off to school, she went back to bed and Tenya stayed in the bedroom with her. They both got back up around 9:00 or 9:30 and watched television for about 45 minutes. Reyes said that she got up to go to the bathroom around 10:15 and when she came out about ten or fifteen minutes later, Tenya was gone. She looked around the house for her, then went outside and called to her neighbors and asked if they had seen the child. They said they had not, so she went inside and called her mother. Shortly after, she heard her neighbor yell and saw that he had Tenya in his arms. Reyes claimed Tenya had been missing only twenty to twenty-five minutes when they found her and that it took between two and five minutes to drive to the hospital.

1. Reyes argues the evidence was insufficient to support the verdict. We disagree. A person is guilty of reckless conduct if she

> causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that [her] act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. . . .

OCGA § 16-5-60. The evidence, as discussed above, was sufficient to authorize a jury to find beyond a reasonable doubt that Reyes was guilty of reckless conduct. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the [defendant] no longer enjoys the presumption of innocence; moreover[,] an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, [supra]. *Howard v. State*, 261 Ga. 251, 252 (403 SE2d 204) [(1991)]; *King v. State*, 213 Ga. App. 268, 269 (444 SE2d 381) [(1994)].

*Dolphus v. State*, 218 Ga. App. 565, 566 (462 SE2d 453) (1995). The jury, assessing the weight of the evidence and the credibility of the witnesses, chose not to believe Reyes' testimony that Tenya had been gone only a short while, but rather, chose to believe the evidence which showed that Reyes allowed Tenya to wander unsupervised and

that the child had been missing for over an hour before Reyes began looking for her. *Weems v. State*, 267 Ga. 182, 183 (476 SE2d 585) (1996).

*Hall v. State*, 268 Ga. 89 (485 SE2d 755) (1997), on which Reyes relies, is not controlling in this instance. In *Hall*, the defendant left her three children, ages five, three and one, with their older brother who was not quite twelve years old. The three-year-old child suffered a severe head injury while in the older brother's care, and the mother was charged with reckless conduct. The court held that the vague and indefinite language in the statute as to what risks are "substantial" and "unjustifiable" permitted law enforcement officials to selectively and arbitrarily prosecute the defendant. The opinion stated that the defendant's actions "were deemed to be unjust and unreasonable only when viewed in retrospect." Id. at 94. Compare *State v. Boyer*, 270 Ga. 701 (512 SE2d 605) (1999) (Reckless Conduct Statute not subject to vagueness challenge where day care center employee roughly handled 12-month-old child).

But, the facts in this case are not similar to the facts in *Hall*. First, Reyes' lack of supervision over her child is not an action that placed Tenya at risk only in hindsight. The risks posed to a three-year-old child who is allowed to wander down the road unsupervised are both substantial and unjustifiable. See *Boyer*, supra at 703.

2. Reyes also claims the trial court erred in admitting the similar transaction evidence. But, Reyes does not argue that the trial court failed to make the proper inquiry required by *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991); rather, Reyes claims that there was no evidence at trial on the issue of intent and the State improperly used previous acts to show that she acted in a certain manner in the present case.

There was no error. The trial court conducted a hearing before admitting the evidence and properly found that the evidence was relevant for some purpose other than to show that Reyes likely committed this crime because she is a woman of bad character. See *Bohannon v. State*, 208 Ga. App. 576, 580 (431 SE2d 149) (1993). Moreover, the trial court twice instructed the jury that the evidence was admitted only for the limited purpose of showing course of conduct.

3. Reyes also argues the court erred in allowing the DFCS representative to testify about the hazards Tenya would have encountered that morning after she left her house and before she was attacked. Reyes claims the evidence was irrelevant and prejudicial. We disagree. Reyes was charged with consciously disregarding a substantial and unjustifiable risk that her failure to adequately supervise Tenya would endanger her safety. Therefore, the hazards the child encountered when she was allowed to wander away from her house were both relevant and admissible. See *Humphrey v. State*, 218 Ga.

App. 574, 576 (462 SE2d 641) (1995).
   *Judgment affirmed. Ruffin and Ellington, JJ., concur.*

DECIDED FEBRUARY 1, 2000.

*Levinson & Paul, Christopher G. Paul*, for appellant.
   *T. Joseph Campbell, District Attorney, Sharon M. Fox, Assistant District Attorney*, for appellee.