## A07A1549. KAIN v. THE STATE.
### (650 SE2d 749)

PHIPPS, Judge.

Based on a jury's finding that Lottie Kain's criminal negligence in failing to supervise her two-year-old daughter, Nicole Payne, and her three-year-old son, Jonah Payne, caused the children's deaths by drowning in April 2005, Kain was convicted on two counts of cruelty to children in the second degree and given consecutive sentences of five years imprisonment followed by five years on probation. Kain appeals her convictions. Among other things, she challenges the sufficiency of the evidence to show that she was criminally negligent. We find the evidence sufficient and affirm.

A succession of state's witnesses testified to Kain's chronic neglect in supervising her children. Her landlord testified that a couple of months after Kain and the children's father had moved into their residence, the landlord found Jonah by himself in the middle of the road near a ravine into which he could have fallen. When the landlord took the child home, Kain sought to justify her inattention to the child, then about one and one-half years old, by explaining that she had put him outside to play and told him not to leave the yard. On another occasion, the landlord observed that Kain and the father had left Jonah home alone in his playpen. The landlord had to explain the danger of that to Kain. Testimony given by two of Kain's neighbors showed that Kain often came over to their residences to use their telephones, leaving both Jonah and Nicole home alone, and that on numerous occasions they saw Jonah wandering outside by himself. After Kain left the children home alone for almost an hour awaiting

---

[11] See *Wright v. State*, 283 Ga. App. 393, 394-395 (641 SE2d 605) (2007).
[12] See id.

a telephone call, one of the neighbors decided not to let her use the telephone anymore. The other neighbor stopped coming to the door when Kain knocked.

After receiving a report that Kain and the father had left Jonah home alone to attend a party, the Department of Family and Children Services provided the couple with in-home parenting classes. While the classes were in progress, Kain continued to leave Jonah, and then Nicole, unattended. These classes continued for about two years. The month after the classes ended, emergency medical personnel were summoned to Kain's residence because Nicole, unsupervised by any adult, had somehow gotten hair remover on her head and face. As a result, she was taken by ambulance to the hospital for treatment of chemical burns.

The drowning deaths of the children occurred the following month. Another one of Kain's neighbors testified that she saw Jonah and Nicole playing outside without supervision on that day, as she had many other times. At about 3:00 p.m., she saw the children going toward the rear of their residence. That was the last time she saw them. Kain testified that the children were with her at about 5:45 p.m., when they wandered outside the house. At a neighbor's urging, Kain placed a 911 call at about 6:00 p.m. reporting that the children were missing.

A paramedic who appeared on the scene at the time of the children's disappearance testified that although the father was extremely distraught and "just begging us to find his babies," "[t]he only concern [Kain] had was, I hope I don't go to jail for this." In a statement to police, Kain acknowledged that the children had gotten out of the house by themselves several times that day. She also admitted that she had only gotten one or two hours sleep the night before and had fallen asleep later that morning, because a couple whom she and the children's father had met through a toll-free chat line advertised on television had come to their house during early morning hours for a sexual encounter.

Several days after the children's disappearance, their bodies were recovered from a sewage retention pond accessible through wooded trails and located about 1,200 feet from the children's home. The forensic pathologist who performed the autopsy testified that, in his expert opinion, the children were conscious and would have experienced pain before drowning.

Testifying on her own behalf at trial, Kain denied any negligence in supervising her children either on the day they wandered away and drowned or at any time before. A forensic psychologist who evaluated Kain testified that although she scored in a borderline range of intellectual functioning and had received diagnoses of depression and post-traumatic stress disorder, she had graduated

from high school, was not mentally retarded, and did not suffer from any mental deficiency or disorder that would relieve her of criminal responsibility.

1. There is no merit in Kain's challenge to the sufficiency of the evidence.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*[, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)].[1]

In *Reyes v. State*,[2] a three-year-old girl whose mother often allowed her to wander unsupervised outside the home was found unconscious in a neighbor's yard after being attacked by an animal. In *Baker v. State*,[3] police were summoned to break into a two-story home after the father had left his three-year-old and nine-month-old children unsupervised on the upper floor near an unprotected downward flight of stairs. In both cases, the parents' convictions for reckless conduct were upheld.

Reckless conduct

> is an act of criminal negligence, rather than an intentional act, that causes bodily harm or endangers the bodily safety of another. It involves consciously disregarding a substantial and unjustifiable risk that a person's act or omission will cause harm or endanger the safety of the other person. Proof of criminal negligence is essential for a conviction of reckless conduct.[4]

Under OCGA § 16-5-60 (b), reckless conduct is a misdemeanor.

Prior to 2004, Georgia had no felony statute protecting children from harm caused by criminal negligence. To rectify that situation, OCGA § 16-5-70 (c) was amended in 2004 to provide that any person commits the offense of cruelty to children "in the second degree" when such person "with criminal negligence" causes a child under the age

---

[1] *Reyes v. State*, 242 Ga. App. 170, 172 (1) (529 SE2d 192) (2000) (citations and punctuation omitted).

[2] Id.

[3] 280 Ga. 822-823 (1) (633 SE2d 541) (2006).

[4] *Jackson v. State*, 276 Ga. 408, 411-412 (2) (577 SE2d 570) (2003) (citations and punctuation omitted).

of 18 cruel or excessive physical or mental pain.[5] Also in 2004, subsection (b) was added to OCGA § 16-2-1 to define "criminal negligence" as "an act or failure to act which demonstrates a willful, wanton, or reckless disregard for the safety of others who might reasonably be expected to be injured thereby."[6]

As in *Reyes* and *Baker*, the evidence here authorized a rational trier of fact to find the defendant guilty beyond a reasonable doubt of criminal negligence in the supervision of her children. Kain does not challenge the sufficiency of the proof to establish that she caused her children cruel or excessive physical or mental pain. We find no merit in Kain's challenge to the sufficiency of the evidence.

2. Kain charges the trial court with error in denying an oral motion to quash the indictment brought by defense counsel at trial. We find neither error nor prejudice.

> It is well established that a special demurrer, which objects to the form of the indictment, must be made prior to pleading not guilty to the indictment: A general demurrer, in which a defendant contends that the charging instrument fails altogether to charge him with a crime, may be raised at any time.[7]

Thus, Kain's motion to quash the indictment was timely as a general demurrer but untimely as a special demurrer.

> The true test of the sufficiency of an indictment that will withstand a general demurrer is as follows: If all the facts which the indictment charges can be admitted, and still the accused be innocent, the indictment is bad; but if, taking the facts alleged as premises, the guilt of the accused follows as a legal conclusion, the indictment is good.[8]

Moreover,

> [w]hen trial has been had before the appellate court reviews the merits of the motion to quash, where no prejudice to defendant has occurred though the indictment (or accusation or citation) is not perfect, reversal is a mere windfall to

---

[5] Ga. L. 2004, p. 57, § 3.

[6] Ga. L. 2004, p. 57, § 2.

[7] *Palmer v. State*, 282 Ga. App. 366-367 (638 SE2d 797) (2006) (punctuation and footnote omitted), certiorari granted by Supreme Court of Georgia on March 26, 2007.

[8] *Dunbar v. State*, 209 Ga. App. 97, 98 (2) (432 SE2d 829) (1993) (citation and punctuation omitted).

defendant and contributes nothing to the administration of justice. Convictions are no longer reversed because of minor and technical deficiencies which do not prejudice the accused. Upon a proceeding after verdict, no prejudice being shown, it is enough that necessary facts appear in any form, or by fair construction can be found within the terms of the indictment (or accusation or citation). Thus a defendant who was not misled to his prejudice by any imperfection in the indictment (or accusation or citation) cannot obtain reversal of his conviction on that ground.[9]

In this case, Kain was charged with cruelty to children in the second degree based on allegations that, with criminal negligence, she had caused the children cruel and excessive physical and mental pain and suffering "to wit: . . . drowning death . . . by failing to reasonably supervise and reasonably watch said" children. In moving to quash the indictment, defense counsel argued that the allegations of the indictment were insufficient to charge Kain with commission of a crime, because failure to reasonably supervise or reasonably watch one's children does not amount to criminal negligence. This argument is without merit. Although the failure to reasonably supervise or watch one's children may not in and of itself constitute criminal negligence, such dereliction certainly may rise to that level depending on the circumstances. Thus, the indictment was good against a general demurrer. In addition, the trial court charged the jury on the allegations of the indictment as well as the legal definitions of "cruelty to children in the second degree," "criminal negligence," and "reckless conduct," and the court further charged the jury that no person shall be found guilty of any crime committed by misfortune or accident in which there was no criminal negligence. Therefore, Kain was not prejudiced by the wording of the indictment.

3. Kain contends that the trial court erred in allowing the state to present evidence of the sexual encounter in which she was involved the night before the drownings. Kain, however, has not preserved the issue for appellate review.

Prior to trial, the state filed a motion to introduce evidence of the sexual encounter as either res gestae evidence or as evidence of similar transactions or prior difficulties. By pretrial order, the court ruled that evidence of the sexual encounter could be admitted as circumstances surrounding the offense if the state could tie it to the negligence charged to Kain in allowing the children to wander away

---

[9] *Wade v. State*, 223 Ga. App. 222, 224 (477 SE2d 328) (1996) (citation and punctuation omitted).

from the home before they drowned. The state made that connection through Kain's admission that the events of the night before had caused her to suffer a lack of sleep that day and that the children had been getting out of the house by themselves several times. Moreover, Kain waived her objection to admission of the evidence by failing to obtain a ruling at trial.[10]

4. Kain claims that the trial court abused its discretion by denying her motion for mistrial after the prosecutor commented to the court during his examination of a police officer that the court had found that a certain statement by Kain to the officer had been freely and voluntarily given. Kain also complains of a curative instruction later given by the court.

After the court denied Kain's motion for mistrial, it immediately informed the jurors that, under detailed instructions the court would provide to them at the end of the trial, they would be required to make the ultimate decision whether Kain's statement to police was freely and voluntarily given. The jurors were not, however, required to make that decision, because the prosecutor in his subsequent examination of the officer decided not to elicit testimony from the officer concerning the statement in issue. Under these circumstances, Kain was not harmed by admission of the officer's testimony. Therefore, she was not entitled to a mistrial, and her challenge to the adequacy of the court's curative instruction is moot.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED JULY 31, 2007 — ■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

*Garrett & Gilliard, Michael C. Garrett*, for appellant.
*Dennis C. Sanders, District Attorney, William P. Doupé, Assistant District Attorney*, for appellee.

---

[10] See *Shelly v. State*, 107 Ga. App. 736, 737 (2) (131 SE2d 135) (1963).