296 Ga. 557
FINAL COPY

## S14A1705. CORVI v. THE STATE.

BENHAM, Justice.

Appellant Marta Corvi appeals her convictions for cruelty to children

in the second degree and for reckless conduct related to the drowning deaths

of Sophia Juarez and Mia Penoyer.[1]  On appeal, appellant challenges the trial

court's failure to quash the indictment as being void for vagueness as applied

and challenges the sufficiency of the evidence.  For the reasons set forth

herein, we reverse.

The evidence in the light most favorable to the verdict shows that in

April 2012, appellant came to live with Eduardo and Saundra Juarez and their

---

[1] The deaths occurred on June 10, 2012.  On May 21, 2013, a Paulding County grand jury returned a true bill of indictment charging appellant with two counts of cruelty to children in the second degree and two counts of reckless conduct.  Appellant was tried before a jury from June 17, 2013, to June 20, 2013.  The jury returned verdicts of guilty on all charges listed in the indictment. On July 2, 2013, the trial court sentenced appellant to ten years for each count of cruelty to children in the second degree to be served consecutively as to each other and sentenced her to twelve months for each count of reckless conduct to be served concurrently as to each other and concurrently as to the first count of cruelty to children in the second degree.  The trial court only required appellant to serve one year of her total twenty-year sentence in jail and gave her one year and one month of credit for time already served.  The remainder of her sentence was to be served on probation.  Appellant moved for a new trial on June 27, 2013, the same date as the sentencing hearing, and filed a duplicate motion for new trial on January 9, 2014.  The trial court held a hearing on the motion for new trial on January 7, 2014, and issued an order denying the motion on January 10, 2014.  Appellant filed a timely notice of appeal on January 22, 2014, and the case was docketed to the September 2014 term of this Court.  The case was orally argued on November 7, 2014.

three children. Appellant and the Juarezes had an informal arrangement whereby appellant would look after the Juarez children, in particular five-year-old Sophia, in exchange for room and board. Appellant also cooked and did some cleaning.

On June 9, 2012, appellant's five-year-old granddaughter, Mia, came over to spend the night and play with Sophia. Because the next day was rainy, appellant told the girls they could not go swimming in the backyard pool and so the girls played inside the house. At around noon, Mr. and Mrs. Juarez and their younger son left the house to go to the grocery store. Appellant was left in charge of the two girls and the Juarez's older son, who was thirteen at the time. When the three Juarezes left the house, appellant began cleaning the hardwood floors on the main level of the tri-level house. While cleaning, the girls were playing in Sophia's room on the top level of the house and the older Juarez son was in his room on the main level watching television with head phones on and napping. At trial, it was established that appellant had diabetes and took medicine to control her blood sugar. Appellant told authorities that while cleaning she became dizzy due to low blood sugar and so she went downstairs to take her medication. The

older son testified that appellant told him that she was going to the basement to take her medicine and would be right back.[2]  After taking her medicine, appellant made a personal phone call at around 12:55 p.m.  When she first got on the phone, appellant verbally confirmed that the two girls were still upstairs playing in Sophia's room.  Evidence showed that the phone call lasted approximately 45 minutes.  When the three Juarezes returned from shopping, they saw appellant coming out of the front door of the house, talking on the phone and holding a soda.[3]  Mr. Juarez asked where Sophia was, and appellant replied that the girls were upstairs in Sophia's room; however, when the family looked, the girls were not anywhere inside the house.  The family eventually found the girls in the backyard  pool.  The girls were not breathing, felt cold to the touch, and were blue in color.  The family called 911 at approximately 1:41 p.m.  Despite the efforts of the family, first responders, and hospital personnel, the children could not be revived.

1.  Appellant alleges the trial court erred when it failed to grant her motion for a directed verdict on the ground that the evidence was insufficient.

---

[2] The older son testified that he heard nothing else going on in the house between the time appellant said she was going downstairs and the time his family members arrived back at the house.

[3] Appellant's treating physician testified that one of the ways to control low blood sugar was to drink a beverage with high sugar content.

In regard to the charges of cruelty to children in the second degree, the indictment alleged that appellant "did cause [the children] cruel and excessive physical pain by failing to reasonably supervise said [children]."[4] As to the counts of reckless conduct, the indictment alleged appellant:

> unlawfully did endanger the bodily safety of [the children] by consciously disregarding the substantial and unjustifiable risk that her omission and failure to reasonably supervise [the children] . . . would cause harm to and endanger the safety of said [children] and the disregard constituted a gross deviation of the standard of care which a reasonable person would exercise. . . .[5]

Both cruelty to children in the second degree and reckless conduct are crimes involving criminal negligence. See Kain v. State, 287 Ga. App. 45 (1) (650 SE2d 749) (2007). "Criminal negligence is an act or failure to act which demonstrates a willful, wanton, or reckless disregard for the safety of others who might reasonably be expected to be injured thereby." OCGA § 16-2-1 (b). In this case, the State did not meet its burden of showing appellant's

---

[4] See OCGA § 16-5-70 (c) which provides: "Any person commits the offense of cruelty to children in the second degree when such person with criminal negligence causes a child under the age of 18 cruel or excessive physical or mental pain."

[5] See OCGA § 16-5-60 (b) which provides:
A person who causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor.

conduct while the children were under her supervision was so willful, wanton, or reckless as to constitute criminal negligence supporting the crimes alleged in the indictment.

Based on the evidence, it appears the girls left the upstairs bedroom and went to the pool at some point while appellant was on the phone. The lead investigator in this case testified that he decided to swear out a warrant for appellant's arrest when he learned she was on the phone for 45 minutes. Yet there was no evidence showing that the length of time appellant was on her phone call would have made a difference in the children's deaths. The only time frame established for the drowning to have occurred was between 12:55 p.m. when appellant initiated her phone call and 1:41 p.m. when the family called 911. It was unknown when the girls left the upstairs bedroom, and it was unknown how long they had been in the pool when found. An expert testified that a child could drown in as little as four to six minutes once submerged. Thus, it cannot be said that taking a 45-minute phone call in itself constituted a failure to reasonably supervise the children.

Also, this is not a case where a caretaker left small children unattended in a pool or a similar objectively dangerous circumstance. Cf. <u>Baker v. State</u>,

280 Ga. 822 (633 SE2d 541) (2006) (man found guilty of reckless conduct where he left a three-year-old and a nine-month-old inside the home alone on the second floor and the infant was in his walker six feet away from a downward flight of stairs that was not barricaded for safety). Here, appellant never left the children alone in the house, and she confirmed that they were in Sophia's room playing when she initiated her phone call. Appellant had told the girls they could not go swimming, and there was no showing that the girls had a propensity to disobey appellant or other adults. While Sophia was described as a good swimmer,[6] no evidence was presented that she would swim in her family's pool unsupervised or had a propensity to do so. Also, no evidence was presented that appellant routinely failed to supervise Mia, Sophia, or any other child in her care. Cf. Kain v. State, supra, 287 Ga. App. at 47-48 (evidence sufficient to show criminal negligence constituting reckless conduct and cruelty to children in the second degree where woman regularly allowed her small children to roam outside alone, where woman regularly left them home alone, and where the children drowned one day while outside unattended); Reyes v. State, 242 Ga. App. 170 (1) (529 SE2d

---

[6] Mia, on the other hand, could not swim.

192) (2000) (evidence sufficient to show woman who routinely allowed her three-year-old to traverse a dangerous street while unattended was guilty of criminal negligence constituting reckless conduct when the child was found unconscious and mauled by an animal).  Cf. Johnson v. State, 292 Ga. 856, 857-858 (1) (742 SE2d 460) (2013) (evidence sufficient to show woman guilty of criminal negligence constituting cruelty to a child in the second degree where child died of ingesting prescription methadone, where it was shown the child had fallen ill for several hours before the woman sought medical attention, and where it was shown that the woman had previously given the child crushed prescription Xanax in his milk).

The factual circumstances of this case, even when viewed in a light most favorable to the verdict, do not show appellant's conduct constituted criminal negligence that would sustain charges of cruelty to children in the second degree and reckless conduct.  The evidence was insufficient to convict, and the trial court erred when it failed to grant appellant's motion for a directed verdict and when it rejected the claim in its order denying appellant's motion for new trial.

2. Because we find the evidence was insufficient to convict appellant for the crimes for which she was charged, we need not reach the void for vagueness issue.

Judgment reversed. All the Justices concur.


Decided February 16, 2015.

Cruelty to children. Paulding Superior Court. Before Judge Vinson.

Andrew S. Fleischman, for appellant.

Dick Donovan, District Attorney, Thomas D. Lyles, Assistant District Attorney, for appellee.