**FOURTH DIVISION**
**DILLARD, P. J.,**
**RAY and SELF, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**May 18, 2017**

# In the Court of Appeals of Georgia

A17A0259. JOHNSON v. THE STATE.

DILLARD, Presiding Judge.

Following a trial by jury, Angel Johnson was convicted of two counts of involuntary manslaughter, one count of cruelty to children in the second degree, and one count of making a false statement to law enforcement. Johnson appeals from these convictions, arguing that (1) the evidence was insufficient to find that her actions were the proximate cause of the victims' deaths and injuries, and (2) even if the issue of causation was purely a question for the jury, the trial court erred in failing to give her requested instructions as to proximate cause. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record reflects that in December 2010, Johnson was living in a DeKalb County apartment with four of her children: four-year-old A. Q.; three-year-old D. Q.; two-year-old M. Q.; and approximately three-month-old K. P. Johnson's boyfriend and K. P.'s father, Keith Lee Pinkney, also lived in the apartment.[2] The couple was suffering from financial difficulties at the time, and their gas was disconnected. As a result, Johnson purchased a space heater to warm the apartment.

On the day in question, December 10, 2010, at 3:35 p.m., Johnson and Pinkney left the three older children—who Johnson claimed were napping—alone in the apartment while they took K. P. to pick up and cash Johnson's paycheck. They returned to the apartment approximately 30 minutes later to find the children still sleeping. Then, later that afternoon, Johnson, Pinkney, and K. P. again left the sleeping older children alone while they picked up fast food. Johnson again reported that the children were still asleep when they returned.

---

[1] *See, e.g.*, *Muse v. State*, 323 Ga. App. 779, 780 (748 SE2d 136) (2013).

[2] It is undisputed that Pinkney was indicted for the same offenses as Johnson and pleaded guilty to them on March 3, 2015. Pinkney is not a party to this appeal.

Later that evening, around 9:00 p.m., Johnson put the three oldest children to bed together in the same room with the space heater turned on. And once the children were asleep, Johnson, Pinkney, and K. P. again left the apartment. But before doing so, Johnson shut the bedroom door, blocked the apartment's hallway with a sofa, and blocked access to the kitchen using a table. Johnson later explained that she did these things because one of her children was capable of unlocking the front door, and another child had previously knocked over a lamp, which had burned the floor.

After leaving the apartment this third time, Johnson and Pinkney first stopped by a friend's home and then went to purchase food at Burger King at 10:32 p.m., which was confirmed by the receipt's timestamp. Johnson and Pinkney then took food back to their friend before returning home to the apartment. According to a witness who was familiar with Pinkney's white Escalade, she did not see the vehicle when she arrived at the apartment complex at 10:45 p.m. This same witness indicated that she could smell something burning in the building at the time of her arrival. Johnson and Pinkney returned to the apartment complex shortly after this witness (between 10:45 p.m. and 10:50 p.m.), at which point they were observed exiting Pinkney's Escalade with K. P. still in his car seat.

3

Once Johnson opened the door to the apartment, she could smell smoke emanating from within, and she jumped over the sofa to access the children's smoke-filled room, where she found them in their beds. Johnson grabbed A. Q. while Pinkney grabbed D. Q., and they attempted to resuscitate the children outside of the apartment. Neighbors heard Johnson scream at approximately 10:55 p.m., and one called 911 for assistance at 10:57 p.m. Another neighbor, after hearing that a third child remained inside the apartment, ran in to retrieve two-year-old M. Q., who he found on the sofa blocking the hallway. M. Q. was alive, but skin was peeling away from his body.

At 11:07 p.m., first responders arrived and M. Q. was immediately transported to the hospital, where he was treated for second- and third-degree burns. M. Q. survived, but remained in the hospital for more than one month to be treated for smoke inhalation, carbon-monoxide poisoning, thermal burns, and corneal injuries. He was also placed on a ventilator and underwent five skin-graft operations to his hands, arms, and head. At trial, a doctor testified that even if M. Q. undergoes future surgeries, he will always sustain scarring from his injuries.

Three-year-old D. Q. was also transported to the hospital and, although he lacked a pulse and was not breathing, paramedics attempted to resuscitate him. D. Q.

was pronounced dead at the hospital. His body was burned and blistered, and black mucous and soot were found in his airway, with smoke inhalation the determined cause of death. Four-year-old A. Q. was pronounced dead at the scene. Like her brother, A. Q.'s body was burned and blistered, and smoke inhalation was the determined cause of death.

In the children's bedroom, firefighters found the walls covered with smoke and soot stains, and the space heater was discovered lying face down on or near one of the children's mattresses. In addition to the mattresses, the room was also filled with other combustible materials, including blankets, toys, and bunk beds. And when firefighters entered the room, the space heater was still plugged in and running, the unit lacking an automatic cut-off switch that would have triggered when it tipped over. Finally, although the fire had smoldered out after approximately 45 minutes, most likely because the bedroom door was shut (which also prohibited the smoke detector from alerting), firefighters still extinguished "hot spots" upon arrival, including burning embers on the mattress.

During an interview with law enforcement, Johnson told an investigator that she was outside smoking a cigarette before discovering the fire, and she denied having left the apartment complex. But she later admitted to law enforcement that she

5

had in fact been away from the apartment when the fire started, and she testified to the same at trial and admitted that her original statement to law enforcement was false.

Johnson was subsequently convicted of two counts of involuntary manslaughter as to A. Q. and D. Q., one count of cruelty to children in the second degree as to M. Q., and one count of making a false statement to law enforcement.[3] She appeals from the convictions for involuntary manslaughter and cruelty to children in the second degree, and the trial court's denial of her motion for new trial. We turn now to Johnson's specific claims of error.

1. First, Johnson argues that no rational finder of fact could have found beyond a reasonable doubt that her "act of leaving her children alone in her apartment was unlawful or that it was the proximate cause of their injuries." In other words, she challenges the sufficiency of the evidence to support her convictions for involuntary manslaughter and cruelty to children in the second degree.

---

[3] Johnson does not challenge her conviction for making a false statement to law enforcement.

At the outset, we note that when a criminal conviction is appealed, the appellant no longer enjoys a presumption of innocence.[4] The relevant question before us, then, is whether, "after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[5] We are not at liberty to weigh the evidence or determine witness credibility, and the jury's verdict will be upheld so long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case.[6]

In this case, it is undisputed that Johnson left three of her children home alone the night of December 10, 2010, and that a toppled space heater ignited a fire in their bedroom, causing their injuries while she was absent. Nevertheless, she contends that (1) leaving the children home alone in a closed room with a space heater was not unlawful; (2) even if leaving her children alone were unlawful, this was not the "but

---

[4] *Arbegast v. State*, 332 Ga. App. 414, 415 (1) (773 SE2d 283) (2015); *Westbrooks v. State*, 309 Ga. App. 398, 399 (1) (710 SE2d 594) (2011).

[5] *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

[6] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001); *Westbrooks*, 309 Ga. App. at 399-400 (1).

for" cause of their injuries when those same injuries could have been sustained even if she had been home; and (3) the space heater's lack of an automatic cut-off switch was an unforeseeable intervening cause.

A person commits involuntary manslaughter "in the commission of an unlawful act when he causes the death of another human being without any intention to do so by the commission of an unlawful act other than a felony."[7] Here, Johnson was indicted for committing involuntary manslaughter in the commission of the unlawful act of reckless conduct, which is a misdemeanor committed when a person "causes bodily harm to or endangers the bodily safety of another person" by "consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation . . . ."[8] More specifically, Johnson was indicted for two separate counts of involuntary manslaughter as to A. Q. and D. Q. in that she

> did unlawfully while in the commission of Reckless Conduct, a misdemeanor, cause the death[s] of [A. Q. and D. Q.], a four-year old

_____

[7] OCGA § 16-5-3 (a).

[8] OCGA § 16-5-60 (b).

8

human child [and a three-year-old human child], by consciously disregarding a substantial and unjustifiable risk that [her] acts would cause harm and endanger the safety of . . . [A. Q. and D. Q.] in that the accused person[ ] did leave . . . four-year-old [A. Q.] [and three-year-old D. Q.] without adult supervision in said accused person['s] home, residence, and dwelling place[,] . . . [A. Q. and D. Q.] being left by the accused person[ ] with . . . a two-year-old child in a bedroom with a space heater which caught fire to items in the bedroom thereby inflicting injuries and death upon . . . four-year-old [A. Q.] [and three-year-old D. Q.] by smoke inhalation, such disregard by the accused person[ ] being a gross deviation from the standard of care which a reasonable person would exercise in the situation.

As for cruelty to children in the second degree, a person commits this offense when "such person with criminal negligence causes a child under the age of 18 cruel or excessive physical or mental pain[.]"[9] Johnson was indicted for committing this offense in that she did,

with criminal negligence, cause [M. Q.], a two-year-old child, cruel and excessive physical pain by consciously disregarding a substantial and unjustifiable risk that [her] acts would case harm and endanger the safety of . . . [M. Q.] in that the accused person[ ] did leave . . . two-year-old [M. Q.] without adult supervision in [the] accused person['s] home, residence, and dwelling place[,] said two-year-old [M. Q.] being left by

---

[9] OCGA § 16-5-70 (c).

the accused person[ ]with a three-year-old child and a four-year-old child in a bedroom with a space heater which caught fire to items in the bedroom thereby inflicting injuries upon . . . two-year-old [M. Q.] and burning him, such disregard by the accused person[ ] being a gross deviation from the standard of care which a reasonable person would exercise in the situation.

Our Supreme Court has recognized that "[b]oth cruelty to children in the second degree and reckless conduct are crimes involving criminal negligence."[10] And criminal negligence is "an act or failure to act which demonstrates a willful, wanton, or reckless disregard for the safety of others who might reasonably be expected to be injured thereby."[11] Here, despite her protestations regarding proximate cause, the jury was presented with sufficient evidence to find that Johnson committed the misdemeanor of reckless conduct and that, by doing so, she caused the deaths of A. Q. and D. Q.; and to show that Johnson committed cruelty to children in the second degree as to M. Q. Indeed, Johnson, who testified in her own defense at trial, admitted to leaving her four-, three-, and two-year-old children home alone on *multiple* occasions on the day in question; to knowing that space heaters can cause fires; to

---

[10] *Corvi v. State*, 296 Ga. 557, 559 (1) (769 SE2d 388) (2015).

[11] OCGA § 16-2-1 (b); *accord Corvi*, 296 Ga. at 559 (1).

knowing that her children were capable of engaging in potentially harmful or dangerous conduct (which was why she moved furniture within the apartment to block the children's access to the front door and kitchen); to knowing that there was sufficient space in the Escalade to fit all four children, such that they did not have to be left alone at any point that day; and to knowing that she had used poor judgment. Thus, because the jury was presented with undisputed evidence that, with the foregoing knowledge, Johnson left her four-, three-, and two-year-old children completely unattended for an extended period of time in a combustibles-filled room, sleeping on a mattress that was placed directly on the floor next to a space heater, the evidence was sufficient to find that she committed involuntary manslaughter in the

commission of reckless conduct[12] and to find that she committed cruelty to children

in the second degree.[13]

---

[12] *See Bohannon v. State*, 230 Ga. App. 829, 831 (1) (498 SE2d 316) (1998) (affirming conviction for involuntary manslaughter in commission of reckless conduct when "conscious disregard was accomplished at the moment when the intoxicated appellant placed her three-month-old baby in bed so that [the child] would be defenselessly lying between herself and the co-defendant who was known to her at the time to be intoxicated to the point of being disoriented and high"); *Turnipseed v. State*, 186 Ga. App. 278, 280 (2) (367 SE2d 259) (1988) (physical precedent only) (affirming conviction for involuntary manslaughter in commission of reckless conduct when, although "at the time of the [pitbull] attack on the child, there was no state law specifically forbidding the ownership of pitbull terriers or specifically outlawing any one of [the defendant's] isolated acts regarding the dogs, this did not preclude the jury from finding that the acts of keeping the dogs in the circumstances evidenced, and leaving them unguarded, all with the knowledge of past incidents, built up to reckless conduct on this occasion"); *see also Baker v. State*, 280 Ga. 822, 822-23 (1) (633 SE2d 541) (2006) (holding that evidence was sufficient to support conviction for misdemeanor reckless conduct when defendant left his nine-month-old and three-year-old sons unsupervised on upper floor of a two-story home near an unprotected flight of downward stairs); *Reyes v. State*, 242 Ga. App. 170, 172-73 (1) (529 SE2d 192) (2000) (holding that evidence was sufficient to support mother's conviction for reckless conduct in failing to supervise three-year-old daughter found unconscious, bloody, and soaked with rainwater in neighbor's yard after apparent attack by an animal, when evidence showed that mother allowed daughter to wander unsupervised, and daughter was missing for more than one hour before mother began looking for her).

[13] *See Johnson v. State*, 292 Ga. 856, 858 (1) (742 SE2d 460) (2013) (holding that finding of criminal negligence, on charge of second-degree cruelty to children as predicate felony for felony-murder charge, was supported by evidence that mother failed to prevent three-year-old son from accessing her methadone and failed to seek medical treatment once it became clear that he was ill); *Kain v. State*, 287 Ga. App. 45, 47-48 (1) (650 SE2d 749) (2007) (holding that evidence was sufficient to support

12

2. Johnson next argues that even if the evidence was sufficient to sustain her convictions and that the question of proximate cause was solely for the jury, the trial court nevertheless committed reversible error by failing to give her requested instructions as to proximate cause. Once again, we disagree.

Jury instructions must be read and considered "as a whole in determining whether the charges contained error."[14] And it is not reversible error to fail to charge in the exact language requested when "the charge given adequately covers the correct legal principles."[15]

---

mother's conviction for cruelty to children in the second degree for criminal negligence in supervising her children when her failure to supervise her two-year-old daughter and her three-year-old son caused their deaths by drowning, and witnesses testified to mother's past chronic neglect in supervising the children). *Cf. Corvi*, 296 Ga. at 560-61 (holding that evidence was insufficient to establish that defendant's conduct as to children who drowned in pool was so willful, wanton, or reckless as to constitute criminal negligence, thus precluding convictions for cruelty to children in the second degree and reckless conduct, when evidence established that sometime during defendant's 45-minute telephone call, children left the bedroom where they had been playing and wandered to backyard pool, and the call itself was the extent of evidence of any failure to supervise the children).

[14] *Kinsey v. State*, 326 Ga. App. 616, 624 (3) (757 SE2d 217) (2014) (punctuation omitted); *accord Alexander v. State*, 308 Ga. App. 245, 246 (707 SE2d 156) (2011).

[15] *Kinsey*, 326 Ga. App. at 624 (3) (punctuation omitted); *accord Head v. State*, 261 Ga. App. 185, 187-88 (2) (582 SE2d 164) (2003).

Here, Johnson requested numerous instructions as to proximate cause, but the trial court declined to give Johnson's specific requested instructions. Instead, the record reflects that the trial court instructed the jury, in relevant part, as follows:

A person commits involuntary manslaughter when that person *causes* the death of another human being without any intention to do so by the commission of the offense of reckless conduct.

In that connection, I charge you that the offense of reckless conduct is defined as follows: A person who *causes* bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that her acts or omissions will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation commits the offense of reckless conduct.

An injury or damage is *proximately caused* by an act whenever it appears from the evidence in the case that the act played a substantial part in bringing about or actually causing the injury and damage and that the injury and damage was either a direct result or a reasonably probable consequence of the act.

A person commits the offense of cruelty to children in the second degree when such person with criminal negligence *causes* a child under the age of 18 cruel or excessive physical or mental pain.

14

Criminal negligence is an act which demonstrates a willful, wanton, or reckless disregard for the safety of others who might reasonably be expected to be injured thereby.[16]

Our Supreme Court has explained that "[p]roximate causation imposes liability for the reasonably foreseeable results of criminal (or, in the civil context, tortious) conduct if there is no sufficient, independent, and unforeseen intervening cause."[17] And here, the instructions given by the trial court adequately expressed the requirement that the children's deaths and/or injuries must have been the proximate result of the alleged criminal acts—involuntary manslaughter in the commission of reckless conduct and cruelty to children in the second degree.[18] Accordingly, the trial

---

[16] (Emphasis supplied).

[17] *State v. Jackson*, 287 Ga. 646, 654 (3) (697 SE2d 757) (2010).

[18] *See Flournoy v. State*, 294 Ga. 741, 746 (3) (755 SE2d 777) (2014) ("The trial court's instruction on felony murder and party to a crime, which referenced the allegations of the indictment, was sufficient to inform the jury that, in order to convict, it had to determine [the defendant] caused or was a party in the causing of [the victim's] death, and thus no error is shown by the trial court's failure to give a charge on proximate cause."); *Lewis v. State*, 180 Ga. App. 369, 371 (3) (349 SE2d 257) (1986) ("With regard to the requirement that the death must have been the proximate result of the criminal act, this was adequately conveyed by the court's instruction that the death must have occurred 'as a result of' the negligent omission.").

court did not err in declining to give Johnson's additional requested instructions on proximate cause.[19]

For all these reasons, we affirm Johnson's convictions.

*Judgment affirmed. Ray and Self, JJ., concur.*

---

[19] *See Kinsey*, 326 Ga. App. at 624 (3) ("[T]he foregoing jury charges, when read as a whole, were complete and fair, and in view of them, the trial court did not reversibly err in refusing to give a separate charge [as requested by the defendant] . . .."); *see also Scavonne v. State*, 193 Ga. App. 603, 605 (3) (388 SE2d 735) (1989) (holding that trial court's alleged failure to charge jury on proximate cause was not reversible error when court gave appropriate charge on the subject matter, and noting that when "the charge given substantially covers the applicable principles, failure to give requested instructions in the exact language requested is not error" (punctuation omitted)).